## UNITED STATES v. BRYAN et al.
### No. 7936.

Circuit Court of Appeals, Fifth Circuit.
March 19, 1936.
Rehearing Denied May 2, 1936.

FOSTER, Circuit Judge, dissenting.

Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., and Ben F. Roberts, U. S. Atty., and J. Fair Hardin and Whitfield Jack, Asst. U. S. Attys., all of Shreveport, La.

Edward L. Gladney, Jr., of Bastrop, La., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was on a war risk policy. The verdict and judgment were for plaintiffs. This appeal assigns three errors: (1) The overruling of defendant's motion to dismiss for want of the requisite jurisdictional disagreement; (2) the overruling of its motion for a directed verdict for want of

proof of total and permanent disability; (3) the admission in evidence over defendant's objection of certain opinion evidence.

We do not think plaintiffs' case failed for want of jurisdiction. As proof of disagreement plaintiffs offered a letter of the Director, dated April 4, 1933:

"Mr. Edward L. Gladney, Jr., Attorney at Law, Bastrop, La.

"Dear Sir:—The provisions of the Act of March 20, 1933 [48 Stat. 8 (38 U.S.C.A. § 701 et seq.)] entitled 'An Act to Maintain the Credit of the United States Government' specifically repealed all laws granting or pertaining to yearly renewable term insurance except as to cases wherein contracts of yearly renewable term insurance have matured prior to March 20, 1933, and under which payments have been commenced, or in which judgments have been rendered in a court of competent jurisdiction in any suit on a contract of yearly renewable term insurance, or in which judgment may hereafter be rendered in any such suit now pending.

"Under these provisions favorable consideration of this claim for benefits under contract of yearly renewable term insurance is barred and no further action in connection with this claim can be taken by the Veterans' Administration. Under these circumstances I regret to advise you that further inquiry or correspondence from you seeking further consideration of this claim will necessarily be of no avail.

"The case folder is being retained in the Veterans Administration at Washington, D. C.

"Respectfully,

"H. L. McCoy

"H. L. McCoy,

"Director of Insurance.

"Insurance Form 851."

The government urged below, and urges here, that this letter is not a denial of the claim, but merely a refusal to consider it, within the decisions holding that mere delay or failure to pass upon a claim is not a disagreement. Fouts v. United States (C.C.A.) 67 F.(2d) 249; Hansen v. United States (C.C.A.) 67 F.(2d) 613; United States v. Bell (C.C.A.) 80 F.(2d) 516.

We do not think so. Though the Director was mistaken in saying that the passage of the Economy Act has barred the claim, he did say just that. In his letter he said in effect and in terms that the act he refers to has "repealed all laws granting or pertaining to * * * term insurance," and therefore plaintiffs have no claim. "Under these provisions favorable consideration of this claim for benefits * * * is barred * * * and no further action in connection with this claim can be taken by the Veterans' Administration. Under these circumstances * * * further inquiry or correspondence from you seeking further consideration of this claim will necessarily be of no avail."

Here is no suggestion of deferring, none of delaying, the inquiry to a more convenient season. On the contrary, there is here a definite and final rejection of the claim by the Director, intended to be final, and thus accepted by the claimants.

On May 11, 1933, they brought this suit upon the claim, alleging a disagreement, and attacking as invalid the provisions of the Economy Act on which the Director had based his denial. On October 7, 1933, the government moved to dismiss the suit, not for want of a disagreement, but for want of consent to be sued. The point it made was that the Economy Act had repealed the law under which the suit was brought. On July 24, 1934, this motion was overruled on the authority of Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, and in January, 1935, the government answered to the merits. It was never suggested in the conduct of the trial or even in the motion for new trial that there was no disagreement. It was when appellant came to make up its assignments of error that the point was first made.

We think it would be unreasonable to now hold that not a disagreement, which, until appellant came to make up its assignments of error, both parties treated as such, Rodriguez v. United States (C.C.A.) 80 F.(2d) 646; Sholtz v. United States (C. C.A.) 82 F.(2d) 780, especially when on its face as reasonably construed the letter relied on as a disagreement lends itself easily to that construction. When it comes however, to proof of their claim, appellees stand quite differently. They did not claim until May, 1931, 12 years after the last premium had been paid on the policy, and 10 years after their brother's death. They were therefore heavily burdened to make clear and convincing proof that the disability they claimed existed in a total and permanent form while the policy was in force. They failed to do this. Their proof consisted of AGO records, and the testi-

mony of six lay and two medical witnesses. The AGO records showed that, both when inducted on February 25, 1918, and when discharged on May 20, 1919, the soldier was in good health. These records show hospitalization on September 21, 1918, as a tubercular suspect, with discharge September 27, 1918, final diagnosis, bronchitis, acute, catarrhal, condition on completion of case, well. The clinical record in connection with this hospitalization, while showing a loss of 35 pounds in weight since he entered the Army and present illness beginning about September 7, with cold in lungs, coughing and expectoration, headache, and pains in his chest, tuberculosis suspect, shows a final diagnosis of tuberculous bacilli, negative, bronchitis, acute. On November 11 he was again hospitalized with a diagnosis of "concussion in line of duty." Suffering with influenza, he was admitted to the hospital on November 10, 1918, and returned to duty December 9, with a final diagnosis of convalescent influenza. Though he was in the service for 8 months after this, the records show no further hospitalization. The testimony of his lay witnesses shows that on his return from the Army in July, 1919, the veteran did not appear to be a healthy man, and was unable to do constant work, being short of breath and accustomed to coughing a great deal. All of these witnesses testified that, though he was not able to do full work, he tried to and did, with intermissions, work pretty steadily until a short time before he died. Mr. Estelle, with whom he lived for a good part of the time after his return, said that he kept him at work because he regarded him almost as one of the family, and allowed him to work such part of the day as he could. This evidence, and that of Dr. Kellum that when Duckworth returned from the Army in his opinion he had incipient tuberculosis, that "he could not follow any strenuous kind of labor, hard work at that time would have had a bad effect upon his health," certainly furnished sufficient basis for a finding that the veteran was temporarily totally disabled; for it was evidence of incipient tuberculosis in such a stage as that without injury to his health he could not, and therefore ought not to, undertake to perform gainful labor.

This evidence, however, does not furnish a basis for finding that the disability was permanent. On the contrary, it makes it clear that it was not, since it shows that in all probability, had the veteran taken proper precautions, the temporary condition would have been arrested.

Mr. Estelle testified: "I do not recall that a doctor ever came to the farm to look at Mr. Duckworth while he was there, but I did go in his room and take a little salt or some simple remedy to stop the coughing. It was always up to Mr. Duckworth to decide whether or not he would work." The brother-in-law, who testified to Duckworth's making ties with him, said: "I did not think he was strong enough to do the tie cutting but he wanted to earn a living." The husband of one of plaintiffs testified that in 1920 Duckworth's health "appeared to be worse than in 1919 and still worse in 1921. He became progressively worse from the time he left the army until his death." Dr. Kellum testified: "When I first examined him in 1919 he was in bad condition. I saw him just occasionally from July, 1919 until November, 1919. Continuously from my first examination until he died every time I saw him he went down grade. I never did consider him a well man, but I did not see him from November, 1919 until shortly before his death. I don't think that Mr. Duckworth could have followed any strenuous kind of labor. Hard work at that time would have had a bad effect upon his health. During the time that I saw him his condition became progressively worse. When I examined him in June or July, 1919 he was in an incipient stage. When he was under my observation I did not think him in a physical condition to do any farm labor without injury to his health. If I had in July, 1919 made a definite diagnosis of incipient tuberculosis my advice would have been to go west and I would have advised him to rest." He also testified: "I think under normal conditions living properly, with proper precautions with respect to his health, he could have gone on and lived probably for years. If at the time he came back from the army he had lived properly, taken the proper diet, taken care of himself in every respect, I think with his condition as it was then he would have probably overcome it to where he could have carried on light work or some kind of light labor."

The other physician, Dr. Wright, testified in answer to hypothetical questions which embraced the AGO records and the testimony of witnesses detailed above. On direct examination he said that under the hypothesis put he would think that Duckworth had had tuberculosis ever since his

first illness in 1918, and, while the tuberculosis could have become arrested between September, 1918, and the time of his death, he did not think Duckworth ever had an arrested case. "I think he had it continuously from September, 1918 until his death. I think that if he had done any hard strenuous farm work it would have seriously injured him." He testified on cross-examination: "If the last time Mr. Duckworth was in the hospital for any reason at all was December 1918 and he stayed in the army until the latter part of May, 1919 and did not report back to any hospital, it is reasonable to assume that he was in good shape and did not have tuberculosis during that period. In the incipient stages about 80 to 85% of the pulmonary cases have been completely arrested. No facts have been brought to my attention that this particular case was not a curable one. So far as I know this man's chances of having his case arrested were about 85% at its incipient stage in 1919 with proper treatment and observation. The proper treatment for a case of incipient tuberculosis is rest and diet. A person with incipient tuberculosis should not do work of any kind."

■■ This evidence, we think, leaves in no doubt that no case of permanent disability when the policy lapsed was made out. The record establishes only this, that, having a case of incipient tuberculosis which required him to take proper care and precaution against its becoming permanent and fatal, the soldier neglected these precautions, continuing to do the very things which he should not have done. He thus, after the lapse of time, made permanent what was, when the policy lapsed, only temporary. The policy insured against total and permanent injury while the policy was in force. Temporary totality will not do. Falbo v. United States (C.C.A.) 64 F. (2d) 948; United States v. Walker (C.C. A.) 77 F.(2d) 415; Eggen v. United States (C.C.A.) 58 F.(2d) 616; United States v. Sandifer (C.C.A.) 76 F.(2d) 551. The fact that without getting well of his trouble the veteran finally died of it of course does not make out his case. United States v. Ellis (C.C.A.) 67 F.(2d) 765, at page 767.

■ The third point may be briefly disposed of by saying that, as qualified by the court in a later question, the objected to question and answer did not constitute prejudicial error, especially as the witness testified to substantially the same thing at another point, without objection.

For the failure to instruct a verdict on defendant's motion, the judgment is reversed, and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

SIBLEY, Circuit Judge (concurring).

The Director's letter, which was sent out to all claimants, may also and more naturally mean that his power to consider the claim was thought to be cut off by the Economy Act, and therefore no consideration could or would be given the claim. That would not be a disagreement on the claim, but a refusal to consider it, probably remediable by mandamus in the courts of the District of Columbia. Such claimants as may have so regarded the letter and did not promptly bring suit ought not to be held barred by limitation. But, because the present claimants understood it as a final rejection of their claim and sued, and this construction was initially acquiesced in by the United States, I agree to regarding the letter in this case as evidencing a disagreement. I concur in the other conclusions of the opinion.

FOSTER, Circuit Judge (dissenting).

I agree with the conclusion that there was a disagreement which authorized suit and vested jurisdiction in the District Court. However, I draw different conclusions from the facts in the record.

While in the Army the insured was sent to a hospital and the diagnosis showed that he was a tubercular suspect. Immediately after his discharge, he consulted a doctor and showed positive symptoms of tuberculosis. His work record is practically nil. He was a farm laborer by occupation, and the presumption may be indulged that he was incompetent to do any other class of work. He was given a job as farm hand by an old family friend, who testified that except for his friendship he would not have employed him. After that, he had another job as farm laborer, but he was unable to do a day's work, and, as he had to sleep in the same room with the son of his employer, and as he was constantly coughing, he was discharged.

There was sufficient evidence before the jury to show that he could be classed as totally disabled from the time of his discharge when the policy was in force until his death about two years later in 1921. The conclusion that he was not totally and permanently disabled is apparently based

on the presumption that all cases of tuberculosis may become arrested and, as he did not seek competent medical advice, his early death resulted from his own neglect. The presumption is entirely too violent to have any place in a trial by jury. All cases of tuberculosis are incipient when they begin. The United States census statistics show that in 1921 the death rate from tuberculosis of the lungs was 85.6 per 100,000 population of the United States. Without doubt the soldier could reasonably have been classed as totally disabled at the date of his discharge. Had his disease thereafter been arrested so that he was able to continuously follow any kind of gainful occupation, appellees would not be entitled to recover. But that did not occur. The disease was not arrested, and total disability continued until the day of his death. I think a case for the jury was presented and there was sufficient evidence to sustain the verdict. I therefore respectfully dissent.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.