## UNITED STATES v. HAMMOND.
### No. 8146.

Circuit Court of Appeals, Fifth Circuit.
Jan. 8, 1937.

Randolph C. Shaw, Sp. Asst. to the Atty. Gen., Julius C. Martin, Director, Bureau War Risk Litigation, of Washington, D. C., and R. M. Bourdeaux, U. S. Atty., of Meridian, Miss.

Lee D. Hall, of Columbia, Miss., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Ernest V. Hammond was discharged from the Army June 13, 1919, having in force a war risk insurance certificate. He converted it into a policy for a less amount, premiums on which, with one lapse and reinstatement, he has since kept paid. February 20, 1931, he elected to make claim under his original term insurance for total and permanent disability occurring as early as January 1, 1921, and on

denial of the claim sued and recovered judgment, his converted policy being ordered canceled. This appeal by the United States raises the single question, whether there was error in denying the defendant's motion for an instructed verdict.

Hammond, an automobile mechanic before the war, had illness in the service but was discharged as sound. He married and tried to work at farming with his father in 1919; and in 1920 and till June, 1921, he had employment in a jewelry repair shop, but he worked irregularly, resigning in January, 1921, and continuing till June only because his place had not been filled. Under his physician's advice he was examined in a government hospital January 26, 1921, and was found to have active tuberculosis arising from his service and was awarded back compensation from the date of his discharge, the amount of which would have carried his term insurance till the back compensation was paid. In November, 1921, he was rated temporarily totally disabled as of date January 1, 1921. He was hospitalized a short while but left against medical advice, but did nothing the rest of that year nor until the beginning of 1923. He then began to look after a small farm which he had purchased and worked through share croppers, doing no labor himself. He had a hernia operation in 1924. In 1925 he opened up a watch repair and jewelry business, retaining also his farm, but did no repair work himself, though visiting his place of business several times a week to check it up. In 1931 the farm was lost and the jewelry business abandoned, and a radio repair shop started instead, he again doing no labor himself. In reinstating his converted policy in October, 1924, he certified that he was not totally and permanently disabled.

There was medical testimony from his personal physician to the effect that in his opinion tuberculosis of the lungs was never really cured, though it might become inactive, and he said that Hammond's case was arrested in 1931 though active again in 1935. A government physician testified to an examination in 1924 and a diagnosis of chronic post-influenza bronchitis rather than tuberculosis. Hammond introduced the record of all his examinations by a half-dozen different doctors with the following diagnoses in addition to hernia: November 1, 1920, no pathology found. January 26, 1921, chronic pulmonary tuberculosis, prognosis favorable with treatment. June 24–29, 1921, chronic pulmonary tuberculosis active moderately advanced, prognosis favorable with hospital treatment. October 11, 1921, suspected pulmonary tuberculosis, prognosis good. January 17, 1922, tuberculosis, chronic pulmonary, prognosis favorable with treatment. August 1, 1922, same. March 14, 1923, tuberculosis, chronic pulmonary. Active moderately advanced. Prognosis, guarded. September 18, 1923, same. March 19, 1924, same. April 28, 1924, post-flu chronic bronchitis. March 14, 1927, chronic pulmonary tuberculosis stationary. March 20, 1931, same, arrested.

The uncollected back compensation under the statutes carried the term insurance until the compensation was paid in May, 1921. No premium has been paid on it since, so that total permanent disability by that date must be proven. Hammond is shown to have earned some money during 1921, and from 1923 to 1930, but his work record would not demand a verdict against him. We may accept as correct the finding of the Veterans' Bureau that he was totally disabled before May, 1921, because of active tuberculosis. Proper treatment of such a malady includes complete rest. But, when its ravages are not already too great, proper treatment will, as the evidence shows, very often result in arresting the disease and enabling the patient to resume many occupations. Active tuberculosis thus usually means total disability but not necessarily that the disability is at once permanent. To quote the administrative definition: "Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." To illustrate, if one have both legs cut off, his disability is at once seen to be permanent. If they are merely mangled and there is a good chance that they may heal, there is not reasonable certainty of permanence until time and treatment afford further light. So, with tuberculosis of the chronic type only moderately advanced, there is a good hope under proper treatment of an arrest and a return of the patient to usefulness. Not until treatment has been tried and is found unavailing can it be said that a reasonable certainty of permanence appears. This has frequently been said in substance by the courts. Falbo v. United States (C.C.A.) 64 F.(2d) 948; Id., 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042; United States v. Bryan (C.C.A.) 82 F.(2d) 784; United

States v. Sumner (C.C.A.) 69 F.(2d) 770; United States v. Middleton (C.C.A.) 81 F.(2d) 205; Walters v. United States (C.C.A.) 63 F.(2d) 299; United States v. Rentfrow (C.C.A.) 60 F.(2d) 488; Eggen v. United States (C.C.A.) 58 F.(2d) 616. Until permanency thus appears, premiums must be paid. It might be different in case of a wrong diagnosis, or of an unknown but existing complication which subsequently appears and shows that the patient was never curable. The present is an ordinary case of a well-known malady, the chances of arrest of which are well understood. Every doctor thought Hammond's case might be arrested. He thought so, and not only made no claim for ten years that he was permanently disabled, but kept up and reinstated his converted insurance. Though he would not remain in the hospital and was probably more active than he ought to have been, he did attain a temporary arrest in 1931. We do not think the jury were warranted in finding that the circumstances were such in May, 1921, as to render it reasonably certain that Hammond would never be able to work. The verdict should have been directed against him.

The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.