Willie N. SPROUSE

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare.

Civ. A. No. 637.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Jan. 18, 1963.

Anthony J. Baroody, Staunton, Va.,
for claimant.

H. Garnett Scott, Asst. U. S. Atty.,
Roanoke, Va., for Secretary of Health,
Education and Welfare.

MICHIE, District Judge.

This is an action brought to review a
final decision of the Secretary of Health,
Education and Welfare denying to the
plaintiff disability benefits or the estab-
lishment of a period of disability under
the Social Security Act.

The basis of the final decision of the
Secretary was that the plaintiff was not
disabled on October 31 1960, the date he
filed his application for the establishment
of a period of disability and disability
benefits and did not become so within
the period of three months within which
under the provisions of the Act as ap-
plicable to this case he must have become
disabled after the filing of his applica-
tion if that application is to be made
the basis for the establishment of the
period and the award of benefits.

Section 205(g) of the Act (42 U.S.C.A.
§ 405(g)) provides that in such a suit as
this "the findings of the Secretary as to
any fact, if supported by substantial evi-
dence, shall be conclusive * * *."

The question at issue here, therefore,
is whether there is any substantial evi-
dence in the record to support the finding
of the Secretary that the plaintiff was
not disabled within the meaning of the
Act on or before January 31 1961.

Disability, as far as relevant here, is
defined in § 216(i) (1) (42 U.S.C.A.
§ 416(i) (1)) to mean "inability to en-
gage in any substantial gainful activity
by reason of any medically determinable
physical or mental impairment which can
be expected to result in death or to be of
long-continued and indefinite duration".

█ Plaintiff was, at the time of the
hearing before the Hearing Examiner,
51 years old, had had only three years of
schooling and was married but with no
children. For many years he had worked
as a weaver and loom repairman in a
textile plant. But he stopped work on
February 25 1959 of his own accord be-
cause he was dissatisfied with his work
assignment. He then, with his own

truck and his step son-in-law and the help of another boy, went into business for himself, splitting and selling firewood. He also did some painting. He apparently kept this up until some time in the spring of 1961 though his application for Social Security benefits was filed on October 31 1960.

There are a number of medical reports in the record, some of them apparently having no bearing on the illness for which the plaintiff claims disability. For example, there is a report of a Dr. Coughlan dated as early as December 1951 from which it appears that the plaintiff was in the King's Daughters Hospital in Staunton from December 9 1951 to December 21 1951 for "repair of post-operative hernia." There is another report of Dr. Coughlan of December 31 1951 referring to abcess in the post-operative wound. And finally, of these immaterial medical reports, there is a report from Dr. F. J. Gilbert of the King's Daughters Hospital under date of August 13 1947 from which it appears that the plaintiff's difficulty at that time was diagnosed as "periodontitis complex" and as a result a number of plaintiff's teeth were extracted ("Operation: Multiple extraction of teeth.").

As indicated above, on October 31 1960 the plaintiff filed his application for benefits under the Act and there appears in the record a report of Dr. Charles W. Schiffert dated November 4 1960. From this report it appears that the plaintiff was complaining of shortness of breath, soreness, stiffness, nausea and headache. His liver was palpable and he was diagnosed as having cirrhosis of the liver and diabetes mellitus. Dr. Schiffert reported that the condition was static and that the patient should be able to do light work. It appeared that Dr. Schiffert had been treating the plaintiff since October 1959 and under the heading "Remarks" he stated:

"The patient has abstained from drinking alcoholic beverages for the past year and therefore his health has improved tremendously. The diabetes mellitus was discovered up-on this examination and is now being treated."

The next report is from Dr. John Hiner Guss of Staunton. Dr. Guss reported under date of February 17 1961 in part as follows:

"Patient is 47 years old and has not worked for the past two years because of 'liver disease'.

"This patient has been a long-standing alcoholic and two years ago was found to have an enlarged liver and spleen, and has not worked since that time. Most of his complaints center around pain in the abdomen in various locations, but he has not had any liver decompensation at any time. He has not been icteric nor has he had G-I hemorrhages. His appetite is good and most of the time in the last two years he eats fairly well. However, he has continued to ingest variable amounts of alcohol, and at the moment is hospitalized having been admitted with acute alcoholism.

\* \* \* \* \* \*

"*Impression*: This man does have moderate alcoholic cirrhosis, but this certainly cannot account for any of his disability. It would appear that most of his disability is on a personality basis which is compounded by chronic alcoholism.

"His prognosis is excellent as long as he abstains from alcohol and under these circumstances he should be perfectly capable of doing moderately arduous work."

The next medical report is from Dr. J. L. Glick dated February 22 1961. Dr. Glick also diagnosed the situation as cirrhosis of the liver due to chronic alcoholism. He states:

"This 49 year old male had been in very good health since his last hospitalization here in 1956 until approximately five days ago when he began drinking large quantities of whiskey. \* \* \* The pt. has had liver disease for a long time brought on by *a* ingestion of large amounts

of alcohol and is known to have cirrhosis of the liver."

The diagnosis was "Cirrhosis of the liver on the basis of chronic alcoholism." It will be noted that Dr. Glick here states that the patient had been in very good health since 1956 until five days before his hospitalization which was on February 12 1961, only a few days after the "cut-off" date of January 31 1961, by which date he must have been disabled to be entitled to benefits under the Act.

Another report of Dr. Glick under date of August 30 1961 adds congestive heart failure to the other previous diagnoses of cirrhosis and diabetes. Apparently the plaintiff was in the hospital for about a month this time and left with his condition reported improved. It was stated that the patient had failed to maintain his dietary routine at home and had been unable to purchase his medication. Apparently the congestive heart failure was cleared up as it is not mentioned in later reports. Still another letter from Dr. Glick, addressed to an attorney, dated November 20 1961 is stronger, stating:

" * * * As stated, I have treated him for two years with no improvement, and if there has been improvment, it has been quite negligible. Because of the nature of his condition, we can only anticipate that his course will be down hill and that barring other complications which could, of course, set in because of his poor physical condition generally, I do not feel that Mr. Sprouse can expect many symptom-free days at any time in the future. I have recommended previously that he be given disability benefits, and I persist in feeling the same at this time."

All of the foregoing reports were received in evidence at the hearing before the Hearing Examiner, although, excluding the reports of Dr. Coughlan, which had nothing to do with the plaintiff's present complaints, only the reports of Drs. Schiffert and Guss and the first report of Dr. Glick were prior to the

time when disability must be proved to have existed in this case. And certainly the conditions described in those reports would not constitute disability as defined in the Act. And, with the exception of the February 22 1961 report of Dr. Glick, the later reports above referred to were as of dates approximately seven and ten months subsequent to the critical or cut-off date. Certainly disability as early as late February 1961 cannot be predicated on these later reports as the plaintiff's condition may well have deteriorated substantially in the meantime. One might ordinarily infer that the condition found by Dr. Glick to exist in February most probably existed before February 1st and therefore before the "cut-off" date but in this case the report definitely states that plaintiff had been in good health "until approximately five days ago", thus negativing any such otherwise possible inference.

However the Examiner permitted the filing after the hearing of three other reports or letters, the first from Dr. Thomas L. Gorsuch under date of December 2 1961 and the others from Dr. Glick under date of December 20 1961. These two reports are very much stronger than the others. Dr. Gorsuch said at the conclusion of his report:

"It is felt that this man is incapable of any work such as he has been doing in the recent past. The most that he would be capable of would be sedentary work or very light watchman or janitorial or similar work and it is doubted that his mental capabilities would qualify him for this. (The patient completed the fourth grade in school but can neither read nor write.)"

And Dr. Glick reported in part as follows:

"I have treated Mr. Sprouse for approximately two and one-half years for an advanced liver ailment, which I feel is a result of his chronic alcohol habit with resulting Laennec's cirrhosis. Mr. Sprouse, during this entire time, has shown little or no improvement and there are

many indications that one facet of his condition has become more advanced and debilitating, that being his difficulty to function adequately from the standpoint of his mental processes. I feel besides his physical condition, he has a chronic brain syndrome characterized by short memory span, difficulty in retaining recent and remote events, flight of ideas, flatness of his affect, poor comprehension; and inability to carry through on problems which involve the use of one's mental capabilities. As noted, this condition has progressed during the past two years, and in many respects is more incapacitating to him than is his physical condition.

"It is because of his impaired mental function, as well as physical debility, that I feel Mr. Sprouse is totally incapacitated and is unable to carry on any gainful employment of any nature. Furthermore, I do not feel his condition can be improved with treatment, nor can improvement be expected at any time in the future."

From these last two reports plaintiff's counsel argues that the plaintiff was clearly disabled within the meaning of the Act within a year after he filed his application and so we must assume that he was disabled on or before January 31 1961. But we cannot make that assumption. The reports of Dr. Schiffert just after the application was filed and of Drs. Guss and Glick a few weeks after the cut-off date do not indicate any such serious condition as the reports made by Drs. Glick and Gorsuch more than a year after the application was filed. Doubtless, as the reports indicate, the plaintiff's condition worsened considerably during the year and it may be true, as plaintiff's attorney argues, that upon the basis of a renewed application the plaintiff might be held entitled to benefits under the Act commencing perhaps about a year subsequent to the original application. But we cannot be sure of this. These three reports were filed after the hearing was closed and

the Social Security Administration has not had an opportunity to evaluate them or to have the patient examined by other physicians. And even if they were conclusive I can find nothing in the Act which permits me to grant a disability on the basis of conditions found nearly a year after the application was filed and which appear to be far worse than conditions reported to exist about the time the application was filed—certainly not when, under the Act, the application is good only for a disability that existed not later than January 31 1961.

The final decision of the Secretary must therefore be affirmed.

An order will be entered accordingly.