Ralph G. CUTHRELL, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 9074.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 27, 1963.

Decided March 26, 1964.

Herbert Small, Elizabeth City, N. C., for appellant.

Lawrence R. Schneider, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Robert H. Cowen, U. S. Atty., and Sherman L. Cohn, Atty., Dept. of Justice, on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and WINTER, District Judge.

WINTER, District Judge.

When appellant's claim for disability benefits under the Social Security Act of 1935, as amended, 42 U.S.C.A., §§ 416(i) and 423, which had been filed on November 12, 1957, on account of an injury which he had sustained in July, 1956, was finally denied on August 21, 1961, suit to obtain judicial review of the decision of appellee was instituted, pursuant to § 205(g) of the Act, 42 U.S.C.A., § 405(g). From an order denying appellant's motion for remand, and granting appellee's motion for summary judgment entered April 17, 1963, without opinion, this appeal is taken.

This case involves no new or novel problems of law. It is almost entirely factual. At the time of his applications, appellant was fifty-seven years old, had only a seventh grade education, and had spent his entire working career as a marine carpenter, except for six months as a filling station attendant, and some experience as a farmer and laborer. By the time of denial of his applications, appellant had sustained an arthrodesis of the right knee joint, resulting in complete stiffness of his right knee in extension. The basic findings of the Hearing Examiner were:

> "The evidence of record adequately establishes that this claimant did retain sufficient mental and physical capacity to engage in substantial gainful activity, it [sic] is possible that one of his principal problems may have [sic] his difficulty in obtaining, in his community, a type of work he could do  *  *  *.

> "  *  *  *  The Hearing Examiner finds that the claimant has failed to establish satisfactorily that he was suffering from the type disability intended by the Social Security Act, not only by its own terms but also by the legislative history. The burden of proving his alleged disability period is on the claimant.  *  *  * The evidence fails to establish that the claimant's physical impairment is of such severity and can be expected to be of long-continued and indefinite duration as to make him continuously unable to do any substantial gainful activity."

Because we conclude that an examination of the record as a whole conclusively establishes to the contrary, we will reverse.

In order to sustain his claim to benefits, appellant was required, by § 216(i) of the Act, 42 U.S.C.A. § 416(i), to show "disability," defined for the period in question by both that section and § 223(c) of the Act, 42 U.S.C.A. § 423(c), as being "  *  *  *  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Moreover, he was further required to show that his disability had

existed for a continuous period of not less than six full calendar months.

On July 6, 1956, while performing his duties as a marine carpenter, appellant was injured when a metal fragment passed through his right knee. The fragment was removed and he returned to work, but was only able "to show the other fellow what to do," until July 26, 1956, when his knee became so swollen, inflamed and painful that he was unable to continue. He was referred to Dr. George A. Duncan for treatment and, in October or November, 1956, Dr. Duncan surgically removed appellant's right knee-cap. The operation was followed by physiotherapy and manipulation, with poor results. Dr. Duncan advised him to return to work, in either late 1956 or early 1957, but this advice could not be followed because appellant was using a crutch for support, could not do any lifting and, because he was experiencing such pain, that he was required to take narcotics regularly in order to sleep. On the date that he filed his applications for benefits, November 12, 1957, the report of one of appellee's employees stated that he interviewed appellant, that appellant had come into the office using two canes, on which he leaned heavily, and that it was apparent that the appellant had a right knee disability.

Immediately following his application for benefits, appellant consulted Dr. L. Everett Sawyer. In a report Dr. Sawyer observed that the appellant walked with a cane, had been unable to work, and complained of pain. Dr. Sawyer's examination revealed not only that appellant's kneecap had been removed, but that there was noted atrophy of the right thigh muscles with arthritic changes, and that it had been necessary to prescribe narcotics for the relief of pain. Dr. Sawyer expressed the opinion that appellant "is unable to carry on his usual occupation as a carpenter and jointer."

Dr. Harry Winkler examined appellant and made a written report about his condition on October 16, 1958. This physician found noted atrophy of the muscles of the right calf and leg and very little joint function, since the quadriceps muscle and tendon were not functioning. He recommended an operation to loosen the muscle structures and to graft the tendon to the tibia, and he thought that unless the operation were undertaken appellant would have a fifty per cent. permanent loss of use of his right leg.

Dr. Winkler's recommendation was concurred in by Dr. Gervas S. Taylor, who examined appellant on December 16, 1958. In his report Dr. Taylor wrote that there had been a definite change for the worse in appellant's condition since he had last seen appellant in the summer of 1957, and that appellant had no more than fifty per cent. use of his right leg.

On December 22, 1958 Dr. David P. Meggs, a chiropractic physician, took a history of persistent pain and sensitivity of the injured part, amounting to one hundred per cent. disability as far as gainful employment was concerned. Dr. Meggs expressed the view that this condition could possibly be relieved by further surgery, but there was no hope of achieving a normally functioning knee joint. Assuming that further surgery would relieve acute pain, Dr. Meggs expressed the view that appellant would have a fifty per cent. permanent partial disability of his right leg.

Contemporaneously with the examination by Dr. Meggs, appellant was examined by Dr. John F. Weeks, who reached a similar conclusion that there was adherence of the quadriceps muscle and tendon which eliminated the transmission of power to the tibia and prevented normal extension of the leg at the knee joint. Dr. Weeks expressed the view that this condition may "possibly be eradicated by further surgery, however it is only fair to state that there is no hope at this time of achieving a normally functioning knee joint." Significant, also, is the fact that Dr. Weeks also took a history of appellant's suffering pain continually.

An operation to graft the tendon and to release the power structures was performed on March 18, 1959. In speaking

of it, Dr. Winkler, on April 9, 1959, reported that appellant had been under his care since October 16, 1958, and that appellant "has been totally disabled during the period of my observation and will continue to be disabled for some weeks or possibly months." He also added that he understood that appellant had been disabled even prior to the date of Dr. Winkler's first examination. The March, 1959 operation was followed by physiotherapy; however, appellant continued to experience severe pain, was unable to bend his knee to any considerable degree, and could not walk without the aid of a cane or crutch. He consulted a series of other doctors: Dr. Miller, who was of the view that the appellant would be unable to engage in any useful activity in his then present condition, and recommended a knee fusion so as to reduce his disability to fifty per cent. permanent partial disability; Dr. Wassink, who concurred in Dr. Miller's recommendation and expressed the view that on January 7, 1960 appellant was totally disabled; Dr. Boyd, who recommended the knee fusion to relieve appellant's pain, but stated that the effect of the operation would leave the appellant with a fifty per cent. permanent disability of his right leg; and Dr. Duncan, who concurred in the diagnosis of the other physicians, but recommended the more conservative treatment of a leg brace to eliminate the pain which Dr. Duncan believed appellant was experiencing. Dr. Duncan found an existing fifty per cent. permanent partial disability of the right leg, resulting from pain and loss of motion of the knee.

Appellant accepted Dr. Duncan's conservative approach, and undertook to wear a leg brace to keep his leg straight except when seated. But the brace did not relieve his pain, and he still had to use a cane for support when he tried to walk, and on one occasion, he fell while wearing the brace.

Finally, in December, 1960, appellant submitted to a knee fusion operation, with the result that his knee was completely stiff, with his leg in an extended position, but ultimately the persistent pain since the date of the injury in 1956 was diminished. The operation was performed by Dr. Miller who, in a report about it, stated that appellant's "ability to pursue some other occupation will be limited only by the fact that this knee will be stiff," and, further, that "his vocation will be limited only by this and the fact that he will be unable to kneel because of inability to flex the knee." At approximately the same time as the fusion operation, appellant submitted to psychiatric treatment. His psychiatrist in stating his impression included the observation, "the persistent pain, which he has experienced, can be considered the primary reason for this withdrawal ["almost completely into a contemplation of himself"] and coming to regard himself as an almost hopeless invalid."

Following recovery from the knee fusion operation, appellant was found to have a three-quarters of an inch shortening of the right leg, but to be free of pain, with a permanent partial disability rating of fifty-six per cent. of his right leg. Dr. Miller recommended full weight-bearing and stated that after one month of loosening up his ankle and hip appellant " * * * should be able to return to a gainful occupation *if such can be found for a man of this age.*" (emphasis supplied)

The latest medical report in the record before the examiner was that of Dr. Wassink, dated May 12, 1961. This report disclosed that appellant had developed a right inguinal hernia, possibly as a result of the excessive abdominal pressure while walking on crutches with a heavy cast, and Dr. Wassink expressed the view that appellant was then totally disabled and had been since July, 1956.

Coupled with this extensive medical history, there was evidence before the Hearing Examiner that, on June 16, 1961, the date of the hearing, appellant still required a cane in walking or standing; was required to wear a built-up shoe on his right foot, and that appellant's right ankle was weak and he still experienced much pain at the least physi-

cal exertion. His previous occupation as a marine carpenter required him to bend, stoop, climb, work in close quarters, and remain on his feet all day. At the time of the hearing, appellant was able to walk to the Post Office, a distance of approximately four hundred yards, provided that he rested for thirty minutes before returning, he could drive an automobile if it were equipped with automatic transmission, and he could perform housekeeping chores.

On this record appellee "does not dispute the existence of some impairment at the time claimant filed his application," but appellee seeks to escape the plainly indicated findings of fact by contending that there was a failure of proof to show (1) that the impairment could be expected to be of long-continued and indefinite duration, Allison v. Ribicoff, 307 F.2d 379 (4 Cir. 1962), cert. den. Heath et al v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); and (2) that the impairment caused an "inability to engage in any substantial gainful activity." Gotshaw v. Ribicoff, 307 F.2d 840 (4 Cir. 1962), cert. den. Heath et al v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); Woodson v. Celebrezze, 325 F.2d 479 (4 Cir. 1963); Cochran v. Celebrezze, 325 F.2d 137 (4 Cir. 1963).

Appellee's first contention is based upon the premise that appellant's impairment was remediable in nature. In Bradey v. Ribicoff, 298 F.2d 855 (4 Cir. 1962), cert. den. 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962), cert. den. Heath et al v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963), this Court stated (298 F.2d P. 857):

> "An impairment which is presently capable of being classified as remediable cannot meet the requirement that it be 'of long-continued and indefinite duration.' We think it plain that the express terms of the Act require a reasonable showing of the permanence of the disability. 'Not until treatment has been tried and found unavailing can it be said that a reasonable certainty of permanence appears.' United States v. Hammond, 87 F.2d 226, at 227 (5 Cir. 1937) * * *."

The record in this case clearly establishes that appellant's impairment was not remediable from the date of his application for benefits, and the preceding six months, to the date of his denial of benefits. When appellant sought benefits he had a badly disabled right leg, on which one surgical operation had been performed, and two operations later he still had a badly disabled right leg. As we read the record, the primary purpose of the two later operations was the reduction of pain; there was little or no hope of restoring a substantial degree of usefulness of the leg. The end result of all treatment was that the pain was diminished, but he had a permanent partial disability of at least fifty-six per cent. of his right leg, since his knee was completely stiff and his leg had been shortened by three-quarters of an inch.

The most that can be said in favor of appellee's argument is that the persistent and severe pain suffered by appellant at the time he made claim for benefits which persisted for approximately five years had been translated at the time of denial of benefits into a permanent stiffness of his right leg and a weakened ankle, accompanied by some pain. Where the treatment undertaken was not contemplated to alter appreciably the degree of disability, but simply to effect a substitution in the causes of disability, and where what it has accomplished is no more than the latter, a claimant's impairment is *not* remediable. A denial of relief on the ground that the impairment was remediable would be a flagrant abuse of the spirit of the Act. Cf. Stephens v. Ribicoff, 307 F.2d 304, 305 (4 Cir. 1962); United States v. Hammond, 87 F.2d 226, 228 (5 Cir. 1937).

■ We conclude that at the time of his applications, and for six months prior thereto, as well as at the time benefits were finally denied, appellant had a "medically determinable disability."

Appellee's second contention assumes that appellant had established a medical-

ly determinable disability within the meaning of the Act at the time of his application for benefits, but asserts that this impairment had not caused an inability to engage in any substantial gainful activity within the meaning of the Act, Woodson v. Celebrezze, supra; Cochran v. Celebrezze, supra; Gotshaw v. Ribicoff, supra; Pearman v. Ribicoff, 307 F.2d 573 (4 Cir. 1962), cert. den. Pearman v. Celebrezze, 371 U.S. 951, 83 S.Ct. 507, 9 L.Ed.2d 500 (1963); Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1962). Manifestly, there is no substantial record support to assert the latter.

 Our prolonged summary of the record contains references to the repeated expressions of opinion of appellant's various physicians and surgeons that his ability to engage in gainful employment would be markedly impaired by his physical condition, as well as his age, and the nature of the skills which he possesses. However, resolution of this issue does not depend solely on medical opinion evidence, Gotshaw v. Ribicoff, supra, 307 F.2d p. 844; Underwood v. Ribicoff, supra, 298 F.2d p. 851. Rather, appellant's age, work history, educational background, and job opportunities are to be considered in the light of the principle recently stated by us that a claimant is " 'not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment,' " Underwood v. Ribicoff, 298 F.2d p. 854; Woodson v. Celebrezze, supra; Cochran v. Celebrezze, supra, all quoting with approval from Butler v. Flemming, 288 F.2d 591, 595 (5 Cir. 1961).

Appellant at the time of his claim for benefits was fifty-seven years old; he possessed a seventh grade education; and his work history revealed that he had experience as a farmer, carpenter, laborer, and that, for a brief period in 1944, he owned and operated a filling station. Manifestly, appellant's training equipped him only for work demanding considerable physical exertion and a strong body operating at peak efficiency. When appellant was unable to bend his right knee, his ankle was weak, he was unable to do any lifting, he could not stay on his feet for long periods of time, he suffered pain at the least exertion, and he was required to use a cane or crutch in walking or standing, he lacked the physical ability to engage in the usual occupations in which he was previously able to engage. Moreover, the record reveals that appellant had sought, and been denied, employment in the construction industry and as a service station attendant. Since appellant lacked experience or training for sedentary employment, the absurdity of appellee's finding that appellant retained sufficient mental and physical capacity to engage in substantial gainful activity need not be further considered.

The judgment of the lower court is reversed, with instruction to reverse the finding of appellee denying appellant the benefits he claimed.

Reversed.