Azilee D. JARRETT, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Social Security Administration, United States of America, Defendant.

Civ. A. No. 4332.

United States District Court
W. D. South Carolina,
Greenville Division.

Sept. 12, 1964.

Rodney A. Culbertson, Greenville, S. C., for plaintiff.

Robert O. DuPre, Asst. U. S. Dist. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

█ Plaintiff asks Court review of decision of the Secretary of Health, Education and Welfare denying plaintiff social security benefits. Authority is found in Title 42 U.S.C. § 405(g). The final decision of the Secretary, rendered by a hearing examiner January 18, 1963, stated a finding that plaintiff had not established disability within the intent of the Act. Further finding was that she did not show disability beginning on or before December 1, 1960 sufficient to entitle her to monthly disability insurance benefits under Section 223 of the Social Security Act (42 U.S.C.A. § 423), and on or before December 16, 1960, for the establishment of a period of disability under § 216(i) of the Act (42 U.S.C.A. § 416(i)).[1]

"Disability" is defined in both § 216(i) (42 U.S.C.A. § 416(i)) (disability freeze) and § 223 (42 U.S.C.A. § 423) (monthly disability benefits) as:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

█ The burden of proving disability is upon the plaintiff. Bradey v. Ribi-

---

1. Whether plaintiff may have become "disabled" within the meaning of the Social Security Act *subsequent* to the period covered by her 1960 application (not later than December 16, 1960) was not before the Secretary and is not now before this court. Plaintiff will continue to meet the "special earnings requirement" of the disability provisions of the Act (20 quarters of coverage out of the last 40 quarters ending with the quarter of "disability") at least until March 31, 1964. Plaintiff would not be precluded from filing a subsequent application alleging onset of disability at a later time during which she meets the "special earnings requirement". See Moore v. Celebrezze, 217 F.Supp. 321, 324 (S.D.W.Va.1963); Sprouse v. Celebrezze, 214 F.Supp. 906, 909 (W.D.Va. 1963).

coff, 298 F.2d 855 (4th Cir. 1962) cert. denied 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817. Sections 216(i) (1) and 223(c) (2) (42 U.S.C.A. §§ 416(i) (1) and 423(c) (2) provide in identical terms:

"An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

In Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), the Court stated that in ascertaining the ultimate issue, ability or inability to engage in gainful employment, four elements of proof are important:

(1) The objective clinical findings of treating or examining physicians divorced from expert judgments or medical opinion as to their significance;

(2) The diagnoses and expert medical opinion of the physicians "on the subsidiary questions of fact";

(3) Subjective evidence of pain and disability testified to by plaintiff and lay witnesses; and

(4) Plaintiff's educational background, work history, and age.

The Court, however, pointed out further that the first three elements alone would not conclusively determine statutory disability. Even severe physical limitation must be related to the plaintiff's work history and background. Underwood v. Ribicoff, supra, at 852. To the same effect, see the later case of Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962). Inability to perform a particular job is not inability to engage in any substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840, 845 (4th Cir. 1962). On the other hand, the United States Court of Appeals for the Fourth Circuit, on the same day the Underwood case was decided, held in Bradey v. Ribicoff, supra, that where the plaintiff has failed to establish an ailment that disabled her within the terms of the statute, it is not necessary to consider her work history, education, background or age.

Section 404.1502(g) of Social Security Administration Regulation No. 4 (20 C.F.R. 404.1502(g)) provides that:

"An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity."

The United States Court of Appeals for the Fourth Circuit has held that an impairment which is remediable cannot qualify as one of long continued and indefinite duration. Allison v. Ribicoff, 307 F.2d 379 (4th Cir. 1962). Bradey v. Ribicoff, supra.

The factors to be considered in determining disability due to functional mental disorders are set forth in § 404.1519 (c) (2) of Social Security Administration Regulation No. 4 (20 C.F.R. 404.1519(c) (2)) which provides as follows:

*"Functional mental disorders (psychoses, psychoneuroses, personality disorders).* The mere presence of psychotic or psychoneurotic symptoms and signs is not necessarily incompatible with the ability to perform substantial gainful work. Consideration is given to whether evidence shows regression or deterioration of the individual's intellectual, behavioral or emotional reactions and whether the defects so impair the effectiveness and predictability of the individual's behavior so as to be incompatible with occupational activity. Some of these disorders frequently respond adequately to treatment. Spontaneous remissions may also occur.

"(i) *Psychoses.* In psychoses, the symptoms reflect a break with reality and hospitalization may be necessary. Actual symptoms and persistence of the condition, length of any hospitalization and response to therapy are considered in determining the effect of these disorders.

"(ii) *Psychoneuroses*. In determining the effect of psychoneuroses, consideration is given to whether the psychoneurosis has resulted in severe social, personal and occupational regression or confinement to a mental hospital and whether it persists despite appropriate treatment. The manifestations of tension, anxiety, depression or psychophysiological disturbances, behavioral disturbances, hysterical reactions or obsessive compulsive patterns should be carefully described. An adequate psychiatric examination is generally necessary.

"(iii) *Personality disorders*. Personality disorders are characterized by patterns of socially unacceptable behavior, such as chronic alcoholism, sexual deviation and drug addiction. In the absence of an associated severe psychoneurosis or psychosis, a personality disorder does not in itself result in inability to engage in substantial gainful activity. A person confined in a correctional institution because of antisocial behavior will not be considered disabled unless he has other severe impairments which would preclude any substantial gainful activity if he had not been so confined."

■ The determination of "disability" under the Social Security Act is an administrative decision. Section 205(g) of the Act (42 U.S.C.A. § 405(g)). Laird v. Ribicoff, 207 F.Supp. 668 (W.D. S.C.1962). This principle has been recognized in Underwood v. Ribicoff, supra, 298 F.2d at 851, and approved in Gotshaw v. Ribicoff, 307 F.2d 840, 844 (4th Cir. 1962):

"The ultimate fact in issue; that is, Claimant's ability or inability to engage in any substantial gainful activity, is not to be resolved, however, solely on the basis of medical opinion evidence as to this ultimate fact. Opinion evidence on this issue is without weight. * * * This is a matter for administrative determination."

■ It is clear, therefore, that the Secretary as the trier of fact in social security cases has the duty to weigh all the evidence (medical and non-medical) and to resolve any evidentiary conflict in reaching his decision. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962); Gotshaw v. Ribicoff, supra; Laird v. Ribicoff, supra.

In her request for a hearing September 26, 1961, plaintiff stated: "I have spells that cause me to lose my memory and my general condition makes me unable to work. * * *." This Court must determine if there was substantial evidence upon which the hearing examiner could base a finding that she was not unable to work.

■ This Court takes judicial notice of the kind of evidence usually given by plaintiff in these cases; untrained, unschooled, usually uneducated. There must be some apprehension or fear of the "Court", and such should be taken into consideration. The Court cannot, however, ignore the testimony of medical witnesses, especially one who has treated a plaintiff for many years.

There is no doubt that plaintiff suffers from back trouble. Dr. W. C. Bolt, plaintiff's personal physician, Dr. W. R. Ewing, another family physician, Dr. C. B. Thomas, an orthopedic surgeon, and Dr. Hugh E. Vincent all testified she had back trouble. In addition, she suffered from anxiety, or a psychoneurosis of some kind. Except for her back trouble, however, the medical evidence revealed no organic impairment of a serious nature.

On May 9, 1961 the Disability Examiner's [2] report stated: "Medical evidence does not show that this applicant has an impairment of such severity that would preclude all forms of gainful activity." This statement alone would not, of

2. Signed by Rex L. Salley as "Disability Examiner" and Graham Shaw, M. D., as "Medical Consultant".

course, be determinative, but it must be considered in the light of the fact that claimant is only 44 years old.

Another consideration faces the Court. On October 1, 1960 Dr. C. B. Thomas advised her to have a myelogram and she refused; on October 2, 1961, Dr. Robert G. Thompson, of Anderson, South Carolina, advised her to go to the State Hospital (at Columbia, S. C.) and she refused. Earlier, in February of 1961 Dr. Thompson had reported "Improvement with intensive psychotherapy (which is not available) to the degree the patient could be gainfully employed outside of housework" (could be had).

■ The Court is mindful of the philosophy that every case must be considered on the particular, even the peculiar facts presented.[3] In this case the Court had before it a seeker of benefits who refuses to have a myelogram which would determine whether the back impairment is disabling, or could be relieved by surgery. She has been advised to use traction, corset, heat lamp; uses none. The mere presence of her orthopedic impairment does not automatically entitle her to benefits.[4] She has made no showing that her impairment is not remediable; she has refused to take steps to determine what medicine, surgery or psychiatry can do to restore her ability to earn. The Court feels she has a duty to do so before she can claim disability, especially in view of age and the various diagnoses and advices the record reflects.[5]

■ Not until treatment has been tried and is found unavailing can it be said, on the record here, that a reasonable certainty of permanence appears,[6] certainly there is substantial evidence to support the finding of the Secretary when viewed in this light. Plaintiff has failed to make a reasonable showing of

permanence;[7] it may be that she will now seek treatment and the showing would thereafter be forthcoming. The Court cannot pass on that in this decision.

This Court is unable to say, on this record, that there is not substantial evidence to support the findings of the Secretary. The final determination should be affirmed.

And it is so ordered.

3. Foster v. Ribicoff, 206 F.Supp. 99 (W.D. S.C.1962).

4. Gotshaw v. Ribicoff, 4 Cir., 307 F.2d 840.

5. See Bradey v. Ribicoff, 4 Cir., 298 F. 2d 855, 857; and Allison v. Ribicoff, 4 Cir., 307 F.2d 379.

6. See United States v. Hammond, 5 Cir., 87 F.2d 226; Ward v. Celebrezze, 5 Cir., 311 F.2d 115.

7. Bradey v. Ribicoff, 4 Cir., 298 F.2d 855.