298 F.2d 855
 Mattie E. BRADEY, Appellee,
v.
Abraham A. RIBICOFF, Secretary of the Department of Health,
Education andWelfare, Social Security
Administration, United States of
America, Appellant.
 No. 8390.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 20, 1961.
Decided Jan. 4, 1962.
 
 Marvin S. Shapiro, Atty., Dept. of Justice, Washington, D.C. (William H. Orrick, Jr., Asst. Atty. Gen., Joseph E. Hines, U.S. Atty., Spartanburg, S.C., and John G. Laughlin, Atty., Dept. of Justice, Washington, D.C., on the brief), for appellant.
 John B. Culbertson, Greenville, S.C., for appellee.
 Before SOBELOFF, Chief Judge, BELL, Circuit Judge, and BARKSDALE, District Judge.
 J. SPENCER BELL, Circuit Judge.
 
 
 1
 This is an appeal by the Secretary of Health, Education and Welfare from an order of the District Court for the Western District of South Carolina. The order of the District Court reversed a final ruling by the Secretary that the Claimant herein was not entitled to a period of disability or to disability insurance benefits der 42 U.S.C.A. 416(i)(1)(A) and 42 U.S.C.A. 423 respectively. Upon Claimant's initial request for insurance benefits under the Act, a hearing was held at which documentary evidence of her physical condition was admitted, and at which she testified in person. On the record made at that hearing, the Hearing Examiner denied Claimant's claim, finding: that all her impairments were remediable, that she did not have arteriosclerotic heart disease or kidney involvement, and that her anxiety neurosis accmpanied by a menopause syndrome was not of such severity as to prevent her from engaging in substantial gainful activity. The Appeals Council refused to review these findings. Claimant thereafter applied for judicial review of the agency's final decision under 42 U.S.C.A. 405(g). At the Secretary's request the case was remanded for further administrative action. Thereafter the Hearing Examiner, at Claimant's request, took additional medical testimony from Dr. Keitt Smith, a urologist. TheAppeals Council on the entire record then reaffirmed the original findings of the Hearing Examiner, concluding that there was strong reason to believe that Claimant could continue her former employment and that there were also many other types of work which she could do.
 
 
 2
 The District Court on appeal from the decision of the Appeals Council, which became the final decision of the Secretary, found that there was not substantial evidence in the record supporting the Secretary's ruling. The District Court accordingly reversed that ruling and entered judgment for the Claimant.
 
 
 3
 The Claimant first sought a period of disability and disability insurance benefits under the Act by filing a claim on March 26, 1957. At a hearing following disallowance of the claim, medical reports and other documentary evidence was received in addition to the testimony of Claimant.
 
 
 4
 Claimant was born in 1901, and has an eighth grade education. She was employed since 1916 in the textile industry as a spooler, weaver, and sweeper. She has never done any other kind of work. She left work in 1954 and has not been employed since. She was released from her job at that time because of her poor attendance record, which she claimed was due to illness.
 
 
 5
 We have carefully examined the record. The objective medical findings and the medical diagnoses and expert opinion reveal the sharp conflicts which existed in the evidence before the Secretary. The record also shows the inadequacies in the evidence presented by Claimant in support of her claim. The findings of Dr. Black conflict with those of Dr. Alverson on several points. In addition the findings of Dr. Black in his second report conflict with those made in his first report and where not overtly contradictory, they negate a finding of disability by showing considerable improvement in and recovery from the conditions diagnosed in his first report. Dr. Black is the only physician who made any finding of heart disease, yet there is no evidence that his finding was based in any way upon X-ray or laboratory tests. The detailed report of Dr. Hamilton completely negates heart disease of any kind on the basis of extensive X-ray and fluoroscopic examination of the heart. That report also discloses a condition which may have led Dr. Black to an erroneous finding of heart disease on the basis of an incomplete examination. With the medical evidence in this posture on the issue of the condition of Claimant's heart, we think that there is substantial support in the record for the Secretary's finding that Claimant did not have arteriosclerotic heart disease or angina pectoris.
 
 
 6
 As to the Secretary's finding that there was no kidney involvement in Claimant's condition, the record is in much the same posture. Dr. Nachman expressly stated that there was no kidney involvement. Dr. Black refers once to Claimant's 'genito-urinary' condition, from which it may be possible to draw an inference of kidney involvement. However, there is no specific mention of kidney involvement at any point in Dr. Black's report. In addition Dr. Hamilton's report, made on the basis of X-ray examination and detailed objective findings expressly negates kidney involvement. Dr. Smith, a urologist, as is Dr. Nachman, found the kidneys normal and that there was no kidney involvement. Dr. Alverson made no mention of kidney involvement. We, therefore, conclude that there is substantial support in the record for the Secretary's finding that there was no kidney involvement in Claimant's condition.
 
 
 7
 This leaves us only to deal with the Secretary's finding that all of Claimant's impairments were remediable and that her anxiety neurosis and menopause syndrome were not of such severity as to prevent her from engaging in substantial gainful work. We think it is clear that the latter finding is proper on this record. The Claimant has not claimed at any point that her nervousness is the cause of her inability to work. Rather she has claimed that she cannot work because of her frequent and uncontrollable urination. There is nothing at any point in the record that links her neurosis or menopause syndrome, if indeed they exist, to her frequent urination as a physical or emotional cause. Dr. Hamilton was the only physician who diagnosed these conditions and he did not tie them up with Claimant's urinary difficulty. As part of an exhaustive physical examination he found them to exist and he reported their existence. He did not in any way indicate that they were causes of, or in any was connected with, her urinary difficulties. With no evidence linkng the neuroses and syndrome to the Claimant's urinary difficulties we do not believe they can be considered to be the cause of Claimant's alleged inability to work. We, therefore, find substantial evidence to support the latter finding.
 
 
 8
 We believe that the evidence clearly shows that Claimant is the victim of a bladder ailment, probably a softtype stricture of the urinary tract. The Secretary found only that this condition was remediable. The issue then is whether there is substantial support in the record for a finding that Claimant's stricture of the urinary tract was remediable. It is established that a remediable ailment cannot be the basis of a claim under the Act. 20 C.F.R. 4021.1501(g). Title 42 U.S.C.A. 416(i)(1)(A) expressly states that disability must occur '* * * By reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *.' An impairment which is presently capable of being classified as remediable cannot meet the requirement that it be 'of longcontinued and indefinite duratin'. We think it plain that the express terms of the Act require a reasonable showing of the permanence of the disability. 'Not until treatment has been tried and found unavailing can it be said that a reasonable certainty of premanence appears.' United States v. Hammond, 87 F.2d 226, at 227 (5 Cir. 1937). See also Theberge v. United States, 87 F.2d 697 (2 Cir. 1937), and Remington v. Folsom, 157 F.Supp. 473 (N.D.N.Y.1957). Therefore, if the Secretary had before him substantial evidence from which to conclude that Claimant's bladder condition was susceptible to successful treatment, he was justified in a finidng of non-disability.
 
 
 9
 Dr. Nachman stated that Claimant's blader and urethra troubles 'could be disabling', but did not state that they were incurable conditions. He treated Claimant's codndition with urethral dilatations and medications but gives no indicaton of the results obtained. Dr. Alverson stated that temporary improvement was achieved by treatment with bladder sedatives and urinary antiseptics. Dr. Black said in his second resport that response to therapy was fair. His diagnosis shwed marked improvement in the bladder conditions he had diagnosed in his first report. Dr. Hamilton found, with respect to the bladder condition only a slight redness of the urethral meatus and tenderness along the floor of the bladder. Dr. Smith testified that he found only a slight soft-type stricture of the urethral canal and that in his opinion a single dilatation was adequate for treatment. His whole testimony shows clearly that he did not think the stricture to be of great severity. We think that there is substantial support in this evidence for the Secretary's finding that Claimant's bladder ailment was amenable to therapy.
 
 
 10
 Thus Claimant failed to estrablish the existence of a medically determinable ailment that would cause inability to engage in any substantial gainful activity. Therefore, the District Court was in error in reversing the Secretary's determination and entering judgment for the Claimant.
 
 
 11
 We wish to note that this case is different on the record than that of Underwood v. Ribicoff, No. 8458, 4 Cir., 298 F.2d 850, decided January 4, 1962. In Underwood the evidence established a medically determinable ailment and it then became necessary to consider the effect of this ailment within the framework of Claimant's work history, education, and age. The Secretary failed to so consider the ailment and we accordingly affirmed the District Court's reversal of the Secretary's finding. Here there is no need to enter into any consideration of Claimant's work history, educational background, or age since Claimant failed to establish an ailment that disables her within the terms of the Act.
 
 
 12
 The Claimant in this appeal has placed great reliance upon the case of Harper v. Flemming, 288 F.2d 61 (4 Cir. 1961) as requiring a very liberal interpretation of the Act. We pointed out in Underwood, supra, the necessity of avoiding an overly strict interpretation of the standard of disability. The Harper case is not in point, however, on the interpretation of those sections of the Act with which we are here concerned. It relates to the question whether a woman who owned a farm which was leased to sharecroppers and managed with the aid of a bank as her agent, received 'earnings from selfemployment' within the meaning of 42 U.S.C.A. 411(a) so as to qualify her for old-age insurance payments. It is not authority where the issue is the interpretation of the standard of disability found in 416(i)(1)(A).
 
 
 13
 The judgment of the court below is reversed.
 
 
 14
 Reversed.