Newton B. **HETRICK**, Plaintiff,

v.

Abraham A. **RIBICOFF**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 13151.

United States District Court
D. Maryland.

May 25, 1962.

Walter A. Feldman, Baltimore, Md., for plaintiff.

Joseph D. Tydings, U. S. Atty., Carl J. Lorenz, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

WINTER, District Judge.

Claimant sues the Secretary of Health, Education and Welfare under the provisions of § 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to obtain a judicial review of a final decision disallowing claimant's claim for a period of disability and for disability insurance benefits. The Hearing Examiner and the Appeals Council (the latter acting under designation of the Secretary of Health, Education and Welfare), found that claimaint was not unable " * * * to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration," within the meaning of §§ 216(i) and 223, respectively, of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423.

The scope of review and judicial function in this type of case has been recently considered in Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1962), Bradey v. Ribicoff, 298 F.2d 855 (4 Cir. 1962) and Bramlett v. Ribicoff, 298 F.2d 858 (4 Cir. 1962). Since each case depends upon its own facts, further citation of authority is unnecessary.

In Underwood, examination was made of four elements of proof present there, which are present in the case at bar. They are: (1) the objective medical facts, (2) the diagnoses and expert medical opinions of the treating and examining physicians, (3) the subjective evidence of pain and disability testified to by claimant, together with such corroboration, if any, as may be present, and (4) claimant's educational background, work history and present age. These elements will be considered here.

1. *The objective medical facts:*

Claimant, who had previously experienced an appendectomy and suffered

from burns, sustained a back injury in October, 1955, while employed as a maintenance man for a petroleum company, when a motor he was helping to carry shifted position throwing its weight on him. He was hospitalized from May 9, 1956 to June 6, 1956 at Union Memorial Hospital, in Baltimore, Maryland, where he was diagnosed as having spondylolisthesis and chronic back pain. A spinal fusion of L-4, L-5 and S-1 vertebrae was performed. Claimant was again admitted to the hospital on January 30, 1958 because of pain and scar tissue in the lumbo-sacral region. An exploratory operation was performed, together with release of excessive scar tissue.

Dr. James N. Cianos, in an examination conducted for the Maryland Workmen's Compensation Commission on July 21, 1958, found that claimant had "no motion through the lower lumbar vertebrae. Flexion is limited to 35°. Straight leg raising on each side to 40° is productive of pain. There is ¾" less in circumference of the left calf over that of the right. Reflexes are equal and active."

Dr. Allan H. Macht, who first examined the claimant on April 22, 1958, found that claimant suffered pain in the back with an inability to bend the left leg and pain going to the left leg. He diagnosed the difficulty as a low back syndrome with nerve root irritation to the left following removal of a disc and spinal fusion. He found that claimant could not lift or bend and had trouble walking. Claimant's left thigh was partially atrophied, the reflexes of the left leg were diminished and there was diminution in sensitivity to sharp stimulae on the left.

A third examination was conducted by Dr. Charles Van Buskirk, Professor of Neurology at the University of Maryland School of Medicine, on October 17, 1960. He found the left ankle-jerk less active than the right, the muscle mass of the left thigh and calf smaller than that on the right. Back examination showed a marked scoliosis with a concavity to the left side, and marked tenderness over the sacrum, particularly over the left sacroiliac joint. Back movement on bending was limited, with pain, but without spasm, and straight leg raising was somewhat limited on the left side. The Patrick test was quite positive on the left side and femoral nerve stretching is positive on the left, producing pain in the back.

2. *Diagnosis and expert medical opinions:*

Dr. Cianos found 60% disability of the back, the maximum permanent partial disability recognized by the Maryland Workmen's Compensation Law.

Dr. Macht testified to 75% disability of the back and 100% disability of the whole man from an industrial viewpoint. He stated, "I think his [claimant's] condition will probably deteriorate over time," that the deterioration would be gradual and that because of nerve root irritation claimant's muscles would gradually get smaller. Dr. Van Buskirk was of the opinion that there was lumbar root compression which "* * * could be related to the scoliosis or to the presence of adhesions, as was mentioned previously by one of his physicians." He further stated that limitation of motion of the back was present primarily due to pain "* * * although the fusion undoubtedly plays some role." It was his opinion that claimant was suffering pain, but that "* * * very probably this is related to sacroiliac pathology primarily, rather than to root compression."

3. *Subjective evidence of pain and disability:*

After claimant returned to work, subsequent to the 1956 operation, he complained that he was not able to work regularly. He was given light work, beginning in November, 1956, but for November and December of the calendar year 1956 he actually worked only seventeen days. When claimant returned to work after his second hospitalization, his duties consisted solely of placing tickets in a meter recording the quantity of the sale of oil and gasoline and

he continued for three months in the latter part of 1958. When he continued to complain of pain he was retired by his employer.

Thereafter, he drove a school bus for two hours a day, equipped with a specially padded seat, but this work had to be discontinued because of the discomfort and pain which it caused him.

4. *Claimant's educational background, work history and present age:*

Claimant was born in 1898 and attended, but did not complete, the eighth grade. For many years he was employed by a petroleum company as a maintenance man.

After his initial period of hospitalization he returned to limited duty with his employer but, as before stated, worked only seventeen days. After the second hospitalization he worked approximately three months, but was forced into retirement when he evidenced inability to work without discomfort. Since then he has tried driving a school bus but that, too, had to be discontinued.

Plaintiff's entire work history is one of the performance of heavy labor and he has no special skills, except a somewhat limited skill in carpentry, as hereafter stated.

\* \* \*

In his brief and oral argument in his behalf, the Secretary contends that the finding that claimant was not unable to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to be of long-continued and indefinite duration is supported by substantial evidence in six instances. A discussion of those, and their significance to the Court, follows:

1. In the course of his testimony, Dr. Macht expressed the opinion that claimant could perform sit-down work for four to five hours per day, involving the use of his hands, if he had the opportunity of alternating his position and was able, from time to time, to get up and walk around. Specifically, he stated that claimant could be a ticket taker at a motion picture theater or a cashier, so long as he could stand up when he wanted to or sit down when he wanted to.

2. After the original operation in 1956, claimant worked for a period of time, although his performance record for a two months period disclosed that he was able to work only seventeen days.

3. Claimant does operate an automobile and drives an average of three hundred miles per month. Claimant, by his own testimony, does not drive more than twenty-five miles at any given time.

4. Claimant has always had some carpentry tools, including a power saw, at home. Since his injuries he occasionally makes a chair or bench, and he made a rough three-drawer cabinet for use in his kitchen.

5. Claimant did operate a school bus for a limited period of time after his injuries but, notwithstanding that it was equipped with a sheepskin and sponge rubber seat, he was unable, physically, to continue the work.

6. Within the period 1958 to 1960 claimant's weight increased by twelve pounds.

In the view of the Court, these evidentiary facts, when considered singly or collectively, do not support the ultimate finding. The Underwood case, supra, makes clear that the interrelation of the four major categories of proof discussed above must be considered in determining the validity of the ultimate finding, i. e., whether it is supported by substantial evidence. The opinion of Dr. Macht as to work which claimant might perform, while important as a subsidiary question of fact, is not enough to overcome the objectively demonstrable physical limitations of the claimant, his lack of experience and training for a job as cashier, his subjective description of the pain and discomfort he experiences, or the patent difficulties of obtaining a job as cashier or ticket taker, where he can sit when required, but also walk around when required, by reason of his physical infirmities.

The fact that after the 1956 operation claimant worked for a limited period and that for a time he drove a school bus, rather than supporting the finding, militates against it, because in both instances it is uncontroverted that plaintiff was unable to continue such employment. In fact, the work record alone after the 1956 operation demonstrates claimant's unfitness to work.

Nor are the facts that claimant can operate an automobile on a limited basis, or that he pursues some minor woodworking at home, persuasive. Apparently, the Secretary's representatives argue that claimant could operate a taxicab or that he could engage in semi-skilled assembly work, but these conclusions do not logically follow. Claimant's operation of an automobile is limited to an average of nine to ten miles per day, and his uncontradicted testimony is that he does not drive more than twenty-five miles without a break. Notwithstanding the advent of power steering, power brakes and other driving accessories, claimant's demonstrated pattern of motor vehicle operation is not consistent with the operation of a motor vehicle for hire. Nor is claimant's demonstrated pursuit of his woodworking hobby consistent with commercial application of like endeavor. The Court may take judicial knowledge of the fact that commercial assembly work would not be economically feasible where it is uncontradicted that claimant, to avoid stiffness and to alleviate pain, must change his position from time to time and interrupt periods of sitting by periods of walking.

The Court is unable to see why a gain of weight demonstrates physical fitness to engage in gainful activity.

For the reasons set forth above, the Court concludes that, notwithstanding the limited scope of judicial review, it must substitute a finding that claimant is disabled and entitled to benefits because, manifestly, there is no evidence to support a contrary determination by the Secretary's representatives or to sug-gest that the matter be remanded to the Secretary's representatives for the taking of additional proof. Accordingly, the determination of the Secretary is reversed.