John W. DESKINS, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 645.

United States District Court
S. D. West Virginia,
at Bluefield.

Aug. 3, 1964.

Harry J. Capehart, Jr., Welch, W. Va., for plaintiff.

Carl W. Belcher, Acting U. S. Atty., Charleston, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act as amended 42 U.S.C.A. § 405(g), hereinafter referred to as the Act, to review a decision of the Secretary of Health, Education, and Welfare, hereinafter referred to as the Secretary. A decision rendered by a Hearing Examiner on November 18, 1959 became the final decision of the Secretary on March 30, 1960 when the Appeals Council denied plaintiff's request for review. The final decision holds that, upon the basis of his application, filed March 9, 1959, plaintiff is not entitled to either a period of disability under Section 216(i) of the Act, or to disability insurance benefits under Section 223 of the Act. For the plaintiff to prevail, the evidence must establish that he was under a "disability" as defined by the Act, beginning on or before June 30, 1954, when he last met the special earnings requirements and the special insured status for a disability determination. Thus, the only issues for decision by the Secretary were whether or not the plaintiff was entitled to a period of disability and to an award of disability insurance benefits under the Act. These issues were dependent upon specific findings and they were resolved against the plaintiff. The plaintiff, feeling aggrieved by the Secretary's decision, then brought his case before this court, as he had a right to do, and the Secretary has certified a transcript of the record here as prescribed by law. The Secretary having moved for summary judgment, under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the plaintiff filed an affidavit in opposition thereto. The purport of the affidavit is that he, the plaintiff, would like to present "additional medical evidence to the court." It neither discloses the nature of such evidence nor points out its relevancy to the issues involved. It would appear from counsel's brief accompanying the affidavit that his real objective is to have the court, rather than the Hearing Examiner, evaluate the medical evidence and make its own independent adjudication of the claim. The Secretary opposes such procedure as being contrary to law.

We must agree, first, because the affidavit is devoid of any factual matter from which one could conclude that a remand and the taking of additional medical evidence would be fruitful to plaintiff's position; and, second, because the court is clearly without warrant of law to make an independent finding upon the merits or to hear the case *de novo*. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). Under the statute, there are only three alternatives open to the reviewing court, viz.: (a) affirm, (b) modify, or (c) reverse with or without remand.

Therefore, finding as we do that the affidavit sets forth no factual basis to justify a remand, and that we are without authority of law to substitute our own judgment independently of the Secretary's, or to hear the case *de novo*, we must conclude that the affidavit is ineffectual for the purposes sought.

The court will now address itself to a consideration of the Secretary's motion for summary judgment.

For a claimant to receive benefits under Section 223(a) (1) (D) of the Act, he must establish that he was under a disability at the time of the filing of his application therefor, and the last sentence of Section 223, sub-section (c) (2) of the Act puts upon him the ultimate burden of proving his claim in these words:

"An individual shall not be considered to be under a disability un-

less he furnishes such proof of the existence thereof as may be required."

■ The courts have given general recognition to this requirement by holding that the burden of proof is on the claimant to establish his claim with creditable evidence. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960).

The Secretary, as the trier of fact, by rejecting the claim, necessarily found that the plaintiff had failed to carry the burden thus cast upon him by law. The plaintiff, by this review, seeks a reversal of that decision.

A further reference to the Act will disclose that the authority of the court is somewhat circumscribed by this provision therein:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Nevertheless, it is said that this provision of the law does not contemplate that courts should surrender their "traditional functions," but, instead, that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the administrative agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, supra; United States v. Certain Interests in Property, et al., 296 F.2d 264 (4th Cir. 1961); Pruitt v. Flemming, 182 F.Supp. 159, 161 (S.D.W.Va.1960).

Thus, it is seen that in its review of the decision of the administrative agency, the ascertainment of the meaning of the statutory term "substantial evidence," as it relates to cases of this sort, is all-important. It has been defined innumerable times as meaning more than a scintilla, but less than a preponderance.

Thomas v. Celebrezze, supra. For further guidance in this regard, we find that a similar provision appears in the National Labor Relations Act, and in construing its meaning there, the Supreme Court, in Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126, defined the term, "Substantial evidence" as meaning such relevant evidence as a "reasonable mind might accept as adequate to support a conclusion"; and the same court, in National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660, Point 4 of the Syllabus, elaborated upon the meaning of the term thusly:

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

This definition was found to apply to the term as used in the Social Security Act in Pirone v. Flemming, 183 F.Supp. 739 (S.D.N.Y.), affirmed by the Second Circuit in 278 F.2d 508.

It is fundamental that in considering a motion to strike the plaintiff's evidence, and direct a verdict for the defendant, the court is guided by what its action would be if a verdict were returned for the plaintiff, and a motion made for a new trial on the ground of insufficient evidence. It is axiomatic that if there is a material conflict in the evidence, or if more than one reasonable inference can be drawn from the undisputed facts, the case should be submitted to the jury.

Thus viewed, the rule given in Utica Mut. Ins. Co. v. Rollason, 246 F.2d 105 (4th Cir. 1957), on a motion to set aside a verdict, is pertinent here:

"Our inquiry is not whether there was evidence to support a result

contrary to the jury's verdict, but whether there was evidence legally sufficient to support the verdict that was found."

■■ So it is here. The inquiry is not whether there is evidence to support a conclusion different from that reached by the Secretary, but whether there is substantial evidence to support the conclusion he *did* reach. We are not here concerned with whether we might have drawn a different conclusion from the evidence had we been the trier of fact, for such is not properly within our sphere of authority under the limitation imposed upon us by the statute. Under this limited authority, we are confined to an ascertainment from an impartial examination of the record of whether or not the decision of the Secretary, on the basis of the evidence before him, comports with reason and logic.

■ In making this determination, however, it must be borne in mind that the Congress, in amending the law to provide benefits to those becoming disabled from engaging in gainful activity, recognized the existence of social and economic needs that made such legislation desirable. Its obvious purpose was the attainment of a beneficient result and to reach an humanitarian end; and, like all remedial legislation, it should be liberally construed, interpreted and administered that it may accomplish the results intended. Pruitt v. Flemming, supra; Carqueville v. Folsom, D.C., 170 F.Supp. 777; Willard v. Hobby, D.C., 134 F.Supp. 66.

But, however wholesome the purpose and intent of the legislation may be, still the burden of establishing a claim under it is left to rest upon the one who asserts it, and no rule of liberality will take the place of required proof. The award of benefits cannot, therefore, rest upon imagination, speculation, conjecture, or sympathy—only creditable proof will suffice.

■ The courts appear to be in general accord that where there is a conflict in the evidence, or where conflicting inferences may be drawn from established facts, it is the proper function of the administrative agency to resolve the same, and his decision will be upheld by the courts. Thomas v. Celebrezze, supra; Gotshaw v. Ribicoff, 307 F.2d 840, 845 (4th Cir. 1962). And this is true even though there is but a "slight preponderance of the evidence on one side or the other." Underwood v. Ribicoff, supra; United States v. Certain Interests in Property, et al, supra.

■ The type or degree of disability we are here concerned with is defined by Section 223, sub-section (c) (2) of the Act as follows:

"The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

Broken down, it is clear that by this definition, for a claim to be established thereunder, the evidence must disclose:

(1) A physical or mental impairment medically determinable as such;

(2) The impairment thus found must be of such severity as to preclude engaging in any gainful activity;

(3) It must reasonably be expected to either result in death in the foreseeable future; or

(4) Be of such permanent nature as to reasonably be expected to continue for a long and indefinite (unforeseeable) duration.

■ The definition, as it is seen, comprehends a medical finding that the impairment is of such severity and permanency as to preclude the claimant from engaging in any gainful activity, now or in the foreseeable future. Underwood v. Ribicoff, supra; Gotshaw v. Ribicoff, supra; Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962). But in the actual application of the law, it was found that while a given impairment in one individual, with little or no versatility, would pre-

clude him from engaging in any gainful activity, the same or similar impairment in another individual, possessing a greater aptitude, would not. So the courts, in order to give a practical effect to the law, by a series of decisions, have determined that once an impairment is medically shown, a more comprehensive inquiry must be made and that other factors, such as work history, education, skills or the lack of them, age, and job opportunity, are to be taken into consideration in order to reach a total and correct evaluation of the case. Thomas v. Celebrezze, supra; Bradey v. Ribicoff, 298 F.2d 855, 858 (4th Cir. 1962); Underwood v. Ribicoff, supra; Kerner v. Flemming, supra; Varnado v. Flemming, 295 F.2d 693 (5th Cir. 1961).

Therefore, for this court to properly resolve the question presented by this review, it becomes necessary to analyze and weigh the evidence in the broader sense to determine if it is sufficient to support in a persuasive and practical way the administrative decision. This will now be undertaken.

At the onset of his claimed disability, plaintiff was 45 years old, he having been born 3–15–06. He has a sixth grade education and is capable of reading and writing. He worked for thirteen years as a track man for the railroad, then entering the coal mines where he was employed for twenty-two years in various capacities requiring manual labor. His application indicates the mine worked out in October, 1952, and he was unable to pass the examination for other employment. At that time his work involved pulling and dumping cars loaded with slate. He gave "stomach trouble" as the nature of his illness which affected him in this way: "I can't stoop over, my sides hurt, and I am short of breath."

The medical history begins with a report of an examination by Dr. H. A. Bracey, of Stevens Clinic Hospital, Welch, West Virginia, on 7–1–53. It showed:

 " * * * general appearance is good, obviously not acutely ill or in acute distress. Weight 175. Pupils equal and react to light. All teeth removed, complete dentures. Blood pressure 160/100. Heart rate 64, regular rhythm, no murmers heard. Lungs clear. Abdomen negative. Hight right rectus operative scar. Pulse rate is 64, after twenty hops on one foot pulse rate 80 and patient had only mild dyspnea. Two minutes after exercise 64. Chest X-ray negative for active lung disease or cardiac pathology. Hemoglobin 84. Urinalysis negative. Sedimentation rate 4 mms. Serology negative."

From these clinical and X-ray findings, Dr. Bracey suggested the *possibility* of "coronary artery disease" and recommended another examination in eight months.

The next medical report is that of Dr. Lee Yen Chow, of Grace Hospital, Welch, dated 6–10–55. His objective physical findings were essentially normal. He made a diagnosis of "neurosis" and a recommendation for "psychiatric treatment." This apparently was not carried out.

Dr. Ernesto Revilla, of Grace Hospital, examined plaintiff 7–19–56 and diagnosed his trouble as "chronic pancreatitis," prescribed a diet therefor, and recommended a "fluoroscopic examination of gastrointestinal tract." This, too, apparently was not carried out.

Dr. Richard O. Rogers, of Bluefield Sanitarium, next examined plaintiff 5–14–58 (report 5–16–58). His examination was not remarkable except for a finding of "direct tenderness over the abdomen generally of a *moderate* degree." Blood pressure, heart and chest were all found to be normal. He concluded:

 "From the history the patient may well have a recurrent pancreatitis but this is not what is disabling the patient from work. It appears reasonable that the nervousness and weakness that the patient experiences after activity is on a phychobiologic basis and is not reasonably

related to the abdominal pain or gastro-intestinal problem that the patient has experienced in the past.

"I did not do complete study to determine the status of patient's gastro-intestinal problem as this did not appear to be his disabling factor. However, we can do further studies in this regard such as a radio-active fat absorption study if you would like."

Lewis W. Field, Clinical Psychologist, and David M. Wayne, M.D., a psychiatrist, of Bluefield Mental Health Center, on 6-6-58 reported, after examination, that plaintiff had an "anxiety reaction, chronic," but that in their opinion he was only *partially* disabled from a psychiatric standpoint.

The final medical examination and report was that of Dr. Charles B. Chapman, of Grace Hospital, under date of 11-11-59, to which he attached the Pulmonary Function Tests given by Dr. George L. Fischer and the X-ray readings made by Dr. C. W. Fey, both of the same institution. For this examination the plaintiff was kept at the hospital for about a week. The pulmonary tests revealed:

"Moderate obstructive emphysema with considerable improvement after Isuprel. Breathing jerky and poorly coordinated, as often seen in nervous individuals."

The X-ray readings were:

"Radiographs of the dorsal and lumbosacral spine show the dorsal vertebrae to be well formed with no dramatic disc changes. There are some osteoarthritic changes in the lumbar area. The sacroiliac joints show nothing remarkable.

"A radiograph of the chest shows a reticular pattern of interstitial fibrosis with some stippling and nodulation to a moderate degree. The heart appears to be within normal limits.

"A scout film of the abdomen shows the renal shadows to be at essentially the same level. There are no definite calcifications in the course of the urinary tract. Following the intravenous administration of the opaque media it appeared promptly on both sides. Detail of the renal arthitacture was not optimum. However, there was no evidence of dilation and the ureters where visualized had a normal calibre. The urinary bladder showed no definite intrinsic defect."

By the use of these findings by Drs. Fischer and Fey and by his own findings on examination, Dr. Chapman reached these conclusions:

"Aside from the mild findings of osteoarthritis of the spine, X-rays were not remarkable. There might be some slight fibrosis in the chest. The electrocardiogram on two occasions in the last seven days has shown inverted T with left ventricular preponderance in lead 3. He insists that fast walking and going up hills causes burning in the chest and shortness of breath. The chest leads in the electrocardiogram show deficiencies in that T wave is inverted in the 3rd, 4th, 5th, and 6th chest leads. This suggests the possibility of a myocardial ischemia or strain.

"The rest of the examination did not show anything remarkable, and these findings are minimal throughout, but from the electrocardiogram and history, one would feel that there is a possibility of myocardial weakness, along with the mild arthritis. I doubt if he could do heavy work, but he might be trained or rehabilitated to do some type of sitting down machine work."

Since the effective period of plaintiff's application expired June 30, 1954, his case must be evaluated and adjudicated as of that time, for the Act does not cover impairments, the onset of which commenced after the expiration of the insured status. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va.1962); Davidson v. Ribicoff, 204 F.Supp. 368 (S.D.W.Va.1962). This, therefore, necessitates a brief summarization of the

medical findings in retrospect as they tend to reflect upon the status of plaintiff's condition during this crucial period.

The only medical report in the record submitted within the effective period of the application is that of Dr. Bracey on 7–1–53, and he, at that time, found nothing seriously wrong with the plaintiff and suggested only the *possibility* of "coronary artery disease." Subsequent examinations of other doctors failed to confirm this hypothesis. The Bracey report, taken alone, obviously affords no valid basis for an administrative finding of a disability such as is defined by the Act.

The Chow examination of 6–10–55, though made nearly a year after the expiration of the effective period of the application, was objectively negative. He advanced "neurosis" as being at the root of plaintiff's trouble. Even if it could be said that the neurotic symptoms he found antedated 6–20–54, he advanced no opinion as to its disabling effect, if any. The inconclusiveness of his report in this regard renders it unacceptable as positive evidence to establish disability.

█ The Revilla report showed "chronic pancreatitis" as the cause of plaintiff's trouble, and the Rogers report partially confirmed this diagnosis; however, if this condition were established as disabling, which it is not, there is no causation shown between its onset and the effective period of the application. But even if a causation were shown, the subsequent examination of Chapman-Fischer-Fey would indicate that it had cleared up by that time, since it was not mentioned at all in their clinical and X-ray findings of 11–11–59. A condition which is remediable, though disabling for a time, may not be made the subject of a claim under the Act. Bradey v. Ribicoff, supra; Stephens v. Ribicoff, 307 F.2d 304; and Allison v. Ribicoff, 307 F.2d 379 (all from the 4th Circuit).

The Chapman-Fischer-Fey findings, as late as 11–11–59, over five years after the expiration of the effective period of the application, showed only a *possibility* of a *minimal* myocardial weakness, which, if taken as true, would be only "partially" disabling, according to Dr. Chapman's statement.

█ As a prerequisite to an administrative finding of disability, as we have before pointed out, satisfactory proof thereof must appear. The Act specifically so declares. Proof is the effect of evidence and it is, therefore, the only compass by which one may be guided in deciding questions of fact. Of course the burden is on the plaintiff to furnish it. Assertions, unsupported by fact, however elegantly expressed, cannot pass for truth. Search as one may, one can find in the evidentiary record in this case no factual basis upon which a reasonable mind can formulate a conclusion of the existence of a disability in the plaintiff, during the effective period of the application, or later for that matter, such as the Act contemplates. The sum of the medical evidence is clearly incompatible with such a finding.

█ To come within the Act, the impairment, or impairments, complained of must be of such severity, taken singularly or in combination, as to be competent to, and do in fact, produce a disability which precludes the claimant from engaging in any substantial gainful activity and be of such permanence in nature as to be reasonably expected to either result in death in the foreseeable future or to be reasonably expected to continue for a long-indefinite (unforeseeable) duration. The definition of the term "disability", as given in the Act, will admit of no other interpretation. Measured by this standard, the plaintiff's evidence fails to establish a medically determinable impairment. Thus, the rule laid down in Underwood v. Ribicoff, supra, requiring that consideration be given to the effect a given impairment might have upon a claimant, within the framework of his work history, education, age and aptitudes, has no application here. For only when a disabling impairment is medically shown does the secondary question of the effect such impairment may have on claimant's

ability to earn a livelihood, in all lines of endeavor for which he is by education and training capable of following, become material and a proper subject of inquiry under the rule of the Underwood case. Obviously, the showing here calls for no such inquiry.

As before pointed out, this court cannot consider the case *de novo* or make an independent determination of its own on the merits in disregard of the administrative finding, but, instead, on review, as upon a motion to set aside a jury verdict, this court can only look to see if the evidence in its totality, fairly considered, affords a basis for a finding by a reasonable mind that the decision under review has substantial factual support.

Under this concept of our responsibility, we find that the decision of the Secretary comports with reason and logic and is amply supported by substantial evidence. Accordingly, the motion for summary judgment is granted, and plaintiff's complaint is dismissed.