**James W. MILLER, Plaintiff,**

v.

**Anthony CELEBREZZE, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. No. 578.**

United States District Court
E. D. North Carolina,
Washington Division.

April 8, 1966.

---

John A. Wilkinson, Washington, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., by Gerald L. Bass, Asst. U. S. Atty., Raleigh, N. C., for defendant.

LARKINS, District Judge:

This cause comes before the Court as a civil action for the judicial review of a final decision of defendant, denying plaintiff's application to establish a period of disability, and for an award of disability insurance benefits, the application being filed on September 16, 1963. Judicial review of defendant's decision in actions of this class is provided for under the provisions of Title II of the Social Security Act (Title 42 U.S.C.A., Secs. 401 et seq.) and more especially Sec. 205(g) of the Act. Jurisdiction is thereby provided for in the Act.

Plaintiff has instituted administrative proceedings to establish a period of disability benefits under Secs. 216(i) and 223 of the Social Security Act. These administrative proceedings resulted in a denial of benefits to plaintiff. Thereafter, on April 19, 1965, plaintiff filed a complaint with this Court seeking to review, reverse and set aside the decisions in the proceedings and the decisions of the Appeals Council of the Bureau of Hearings and Appeals of the Social Security Administration.

Defendant filed Answer, alleging plaintiff was not entitled to benefits under the Act. Defendant thereafter filed a motion for summary judgment according to the provisions of Rule 56(b) of the Federal Rules of Civil Procedure, with supporting brief. Plaintiff has answered defendant's motion with a reply statement of facts and supporting brief.

### FINDINGS OF FACT

Plaintiff began his long course of litigation with the Social Security Administration on May 11, 1959 (Tr. p. 54). He sought an award for disability insurance benefits on May 11, 1959, alleging he was unable to work from September 15, 1957, because of various stomach disorders (Tr. pp. 54–57). Plaintiff was then fifty-one (51) years old.

This initial application of plaintiff's was denied, and he consented to the decision (Tr. p. 74). He did not pursue administrative remedies available to him upon the adverse decision of his application of May 11, 1959.

Plaintiff again made application to establish a period of disability commencing in September of 1957. He again sought an award of disability insurance. These applications were filed on December 8, 1961, and on January 3, 1962, (Tr. pp. 87 and 101) and both were disallowed. (Tr. p. 105). As the basis for these two claims, he again alleged the same stomach disorders previously alleged. (Tr. pp. 97 and 101). Again plaintiff failed to seek administrative review of the disallowances. (Tr. p. 2).

On September 16, 1963, plaintiff filed his fourth application (Tr. pp. 93–96), and again alleged he became unable to work in September of 1957 because of "stomach removed—diabetic". (Tr. p. 93). Again, the application was denied. (Tr. pp. 107–108), even upon being reconsidered (Tr. pp. 113–114); this latter decision being made only after a disability examiner and a reviewing physician for the Board of Welfare of the State of North Carolina had found plaintiff was not disabled. (Tr. pp. 110–112).

Plaintiff then proceeded to use the appropriate administrative channels, from a hearing before a hearing examiner (Tr. pp. 31–52), who determined that he was not disabled (Tr. pp. 18–27), to the Appeals Council (Tr. p. 17). The Appeals Council granted a review of the decision of the hearing examiner and arranged for further medical examinations of plaintiff (Tr. pp. 11–14). Thereafter, it affirmed the hearing examiner in disallowing plaintiff's claims (Tr. p. 10), this decision being the final decision of defendant (Tr. p. 1).

As a result of plaintiff's numerous applications and of his hearing upon review, the record is replete with reports and analyses which may be briefly summarized in the following manner:

Plaintiff was born on September 10, 1906, in Vanceboro, Craven County, North Carolina. He attended public schools through the fifth grade (Tr. p. 36). He learned to read and write and is capable of making out and filing simple reports as are required in the automotive repair trade. He entered employment as an automobile mechanic at the age of eighteen, in 1924, and continued in that line of work until April of 1957 (Tr. pp. 37–38), at which time he was working in a supervisory capacity. In April, 1957, he became a jailer for Beaufort County, at Washington, North Carolina; and he stayed in this position until September, 1957, (Tr. p. 63) whereupon he stopped working completely, alleging illness as the cause of his work stoppage.

This illness was of a gastrointestinal nature with a history predating plaintiff's cessation of work by some six years (Tr. p. 69).

In December of 1957, plaintiff was operated upon and underwent a subtotal gastrectomy and gastrojejunostomy with related surgical processes in the stomach and small intestine area. (Tr. pp. 67–73). There is also evidence that plaintiff has been suffering from diabetes (Tr. p. 65). The reason for the surgery, however, was "duodenal ulcer". (Tr. p. 72).

In 1959, plaintiff returned to work for three quarters, but again stopped in November of that year (Tr. pp. 88–89, 115). During this short period of employment he was examined by Dr. Clark Rodman, reporting physician for the Department of Health, Education and Welfare, (Tr. pp. 65–66) upon plaintiff's complaints of weakness and recurrent vomiting. Dr. Rodman diagnosed plaintiff's complaints of nausea and vomiting as secondary to his surgery of 1957. This examination was made by Dr. Rodman in May of 1959. He was not able to predict at that time whether plaintiff's condition was static or whether it would show improvement. (Tr. pp. 65–66).

In January of 1960, plaintiff underwent another operation described as an exploratory laparotomy and jejunostomy. Prior to the operation there was medical uncertainty as to whether the complaints of plaintiff were organic or functional (subjective) (Tr. p. 78). After the operation, the plaintiff was discharged as improved.

Thereafter, on May 18, 1960, (Tr. pp. 82–84) plaintiff was again examined by Dr. Rodman, this time upon request of the State of North Carolina's Board of Public Welfare. Dr. Rodman noted those physical problems complained of by plaintiff; but in spite of these complaints, he found by means of objective tests and examinations that plaintiff was relatively normal in the matters tested for a man of plaintiff's age. (Tr. p. 83).

In 1961, plaintiff resumed working and performed in a wage-earning capacity during all four quarters of that year (Tr. pp. 39, 116). In December, 1961, however, plaintiff ceased working in this wage-earning capacity and has not reported earnings for any quarters since then.

In February, 1962, Dr. W. C. Piver, Jr., plaintiff's personal physician, filed a report with the Department of Health, Education and Welfare (Tr. p. 157). He stated therein that plaintiff was "unable to work at any time".

This opinion was reaffirmed by Dr. Piver on September 25, 1963, on February 10, 1964, as well as on two different occasions in June of 1964. It is interesting to note that although Dr. Piver has persisted in his opinion throughout the course of his examinations of plaintiff, the other examining physicians do not support this singular conclusion.

In July, 1963, plaintiff underwent a gallbladder operation, after complaining of ailments sympomatic of a rupture and stones (Tr. p. 137). His convalescence was "very satisfactory" (Tr. p. 138).

Defendant has submitted numerous reports with extensive medical findings contained therein. The content of these reports effectively support the conclusion that plaintiff's heart is normal both before and after exercise (Tr. p. 147), that he is well developed and well-nourished in appearance (Tr. p. 143), that his blood hemoglobin was normal (Tr. pp. 144–145), there was vomiting only at night (Tr. p. 141), and there was no diarrhea, nausea or vomiting after meals (Tr. p. 141).

Finally, plaintiff was given a thorough physical examination at the North Carolina Baptist Hospital in October, 1964. This examination showed a basically healthy man. There was no evidence of myocardial disease (Tr. p. 173), his chest x-ray was normal (Tr. p. 174), and his digestive tract was functioning quite well (Tr. pp. 173–174). It was also found that he was not incapacitated in any way by reason of the diabetic condition (Tr. p. 178).

In support of the conclusions of Baptist Hospital and of the numerous physicians who have examined plaintiff, it is also in evidence that plaintiff has continued to assist his wife in the operation of a small grocery store throughout the period under consideration. (Tr. pp. 43 and 87).

Also, plaintiff, in each of his applications for disability relief, has stated his disability began in September, 1957. But upon being denied relief in the first three applications, he has actually returned to work in a wage-earning capacity.

He has suffered a series of ailments which have been surgically and medically treated quite effectively. He has also continued working at those duties necessary to assist in the operation of a small family grocery store.

## CONCLUSIONS OF LAW

■ The court's powers to judicially review the final decisions of defendant is provided for under the provisions of Title II of the Social Security Act (Title 42 U.S.C.A., Sec. 401 ff.). Section 205 (g) of the Social Security Act specifies the manner of review, and states:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The question then is clear: Did defendant have substantial evidence to support its determination that the plaintiff was not entitled to the disability benefits he seeks? See Soler v. Ribicoff, 223 F.Supp. 472 (S.D.N.Y.1962); and Jones v. Celebrezze, 331 F.2d 226 (7th Cir., 1964).

■ If plaintiff is physically and mentally capable of engaging in substantial gainful activity with reasonable effort and safety to himself, then he should be denied relief. Bradey v. Ribicoff, 298 F.2d 855 (4th Cir., 1962). From the record of this case, and as particularly set out above, it appears that there was substantial evidence to support defendant's conclusion. See Frankum v. Celebrezze, 343 F.2d 426, 427 (4th Cir., 1965). Plaintiff is not entitled to recover in an action such as this where it appears his ailments were remediable in character only. Bradey v. Ribicoff, 298 F.2d 855, supra; and Brown v. Celebrezze, 347 F.2d 227 (4th Cir., 1965).

See also Allison v. Ribicoff, 307 F.2d 379 (4th Cir., 1962); but cf. Allen v. Celebrezze, 247 F.Supp. 447 (D.S.C.1965).

■ The Court considered the medical opinions expressed by Dr. Piver, but did so in conjunction with all the medical evidence presented to the defendant. It is recognized that his opinion was not binding on defendant or the Court, but is to be considered along with all the evidence.

Jacobson v. Flemming, 186 F.Supp. 936, 937 (S.D.N.Y.1960).

■ It was incumbent upon the plaintiff, as it is upon any plaintiff, to carry the burden of proof. In this case, he must show that he was suffering from an impairment, or combination of impairments, of sufficient severity to prevent him from engaging in substantial gainful activity. See Sec. 205(g) of the Act, supra.

When considering the quantity and quality of medical evidence before the defendant, and when it is seen how such evidence was weighed and used by defendant, in conjunction with the facts and circumstances surrounding plaintiff's employment career from September, 1957, to the present time, it is clear that defendant's conclusion is based on substantial evidence and that plaintiff has failed to carry his burden of proof.

## ORDER

Therefore, it is ORDERED that defendant's Motion for Summary Judgment be, and the same is hereby allowed.