Venus SOWARDS, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 984.

United States District Court
S. D. West Virginia,
Bluefield Division.

Jan. 23, 1967.

Marshall G. West, West, Blackshear &
Goode, Pineville, W. Va., for plaintiff.

Milton J. Ferguson, U. S. Atty., Hunt-
ington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S. C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on April 26, 1966, became the final decision of the Secretary on June 30, 1966, when the Appeals Council denied plaintiff's request for review. The final decision holds that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act prior or subsequent to the 1965 Amendments.[1]

Plaintiff last met the special earnings requirements of the Social Security Act as of March 31, 1961. Under the Act, 42 U.S.C.A. § 416(i), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. Thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to March 31, 1961, when he last met the insured status, though it need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case *de novo*, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the Administrative Agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this court is to determine whether the defendant's denial of the plaintiff's claim is supported by substantial evidence.

Plaintiff's present application was filed July 8, 1965 alleging he became disabled as of August 12, 1957, because of arthritis of the spine, blood tumor in his foot, back trouble and smothering spells. He had previously filed an application on November 25, 1960, also alleging he became unable to work in August

---

1. Section 303(a) of Public Law 89–97 (the 1965 Social Security Amendments) amends the meaning of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Previously the physical or mental impairment had to "* * * be expected to result in death or to be of long-continued and indefinite duration."

Under the provisions of Section 303(f) of the law a period of disability may be established by use of this amended definition. However, benefits would only be payable beginning in September of 1965 or the seventh month in which an individual has been determined to be under a disability under the amended test, whichever is later.

1957 because of a blood tumor of the left foot, smothering spells from sinus and diabetes. This application was denied by a hearing examiner on November 9, 1962, as was his request for review by the Appeals Council. Plaintiff also filed application on March 5, 1963 and October 8, 1964, which were denied and from which he took no appeal. In considering the instant case, the examiner concluded that these prior determinations were *res judicata* insofar as the pre-1965 law was concerned.

The Social Security Regulations, 20 C.F.R. § 404.937 provides,

"The hearing examiner may, on his own motion, dismiss a hearing request, either entirely or as to any stated issue, under any of the following circumstances:

"(a) *Res Judicata*. Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure timely to request reconsideration, hearing, or review, or to commence a civil action with respect to such determination or decision."

The hearing examiner found that the two medical reports not considered in prior applications, both of which were made after the expiration of plaintiff's insured status, created no new issues and, consequently, insofar as the pre-1965 law is concerned, those decisions were *res judicata* to the July 8, 1965 application. This is correct and this review is limited to a consideration of the Act's post-1965 provisions to plaintiff's situation. Eplin v. Celebrezze, 214 F.Supp. 836 (S.D.W.Va. 1963).

Plaintiff was born in November 1913, and has a sixth grade education. Most of his work has been in mining where he acted as a brakeman, truck driver, and electric motor repairman. Following the completion of a welding course, he last worked as an arc welder at a factory in Detroit. This was bench work, performed while sitting.

■■ In reviewing the medical evidence we are bound to keep in mind that any disability that has its onset or becomes disabling after the claimant last meets the earnings requirements may not be the basis for a favorable finding. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D. W.Va.1962). Thus, the medical reports submitted subsequent to the expiration of plaintiff's insured status will be treated only insofar as they throw light on his condition as of that time. The fact that he may now be disabled as a result of a deterioration in his condition or because of other ailments that were not present as of March 31, 1961, is not pertinent to this decision.

The first medical report is that of the Dearborn, Michigan Veterans Administration Hospital, and extends from August 1957 to September 1958 with subsequent outpatient treatment. Physical examination on admission was essentially negative with the exception of an area of chronic ulceration on the left foot at the metatarsophalangeal joint. A hemangioma was removed from the sole of plaintiff's left foot. This subsequently required skin grafting and other surgical procedures, including a left lumbar sympathectomy. The operations were successful and the foot continued to heal. He was discharged in September 1958 to be seen again in two months. He was re-examined on November 6, 1958. There was some pain at the first metatarsophalangeal joint on the dorsum of the left foot but no limitation of motion. The wound was healing well. He was discharged as having received maximum hospital benefits.

The next medical report is from the Wyoming General Hospital, dated February 9, 1960, to the West Virginia Department of Public Assistance. The diagnosis was painful left foot, secondary to the tumor removal operation. Prognosis was fair and it was felt that plaintiff's ability to stand and walk was impaired and that he was only able to work at jobs involv-

ing the upper extremities and which could be performed while seated.

In February 1960, plaintiff also received a pension evaluation examination at the Huntington, West Virginia Veterans Hospital. He complained of pain in his left foot which interfered with his sleeping. Respiratory and cardiovascular systems were normal. The area of the old foot tumor was tender to touch and he walked with a limp. The diagnosis was (1) diabetes mellitus not found (2) acidosis of unknown etiology (3) bilateral hallux valgus, more marked on the left, and (4) post operative scars, left foot, right calf and left abdomen.

Dr. R. C. Hatfield examined plaintiff March 13, 1961. The report is rather limited. It refers to a prior examination and describes the scar on the left foot with what looked like a callus formation. No treatment was given and it was stated that the condition caused a moderate limp as though sore. Dr. Hatfield was of the opinion that there would be no improvement.

The next report is a rather exhaustive examination by Dr. John M. Daniel, dated October 9, 1961. Physical examination revealed a well-developed, well-nourished individual with no acute or chronic distress. He was mentally alert and cooperative. Careful systematic evaluation of the various body systems revealed no significant abnormalities. There was no evidence of restrictive motion at any joints and no evidence of redness, swelling or tenderness of joints. No evidence was shown of vascular disease of the lower extremities nor of atrophy or fasciculations, or other neurological changes. The only difficulty encountered was of a subjective nature. There were no positive physical findings other than the scar on the sole of the left foot. There was no evidence of significant pulmonary functional decrease or of cardiac disability. Plaintiff's major problems were described as painful scar syndrome and "asthmatic bronchitis-chronic spastic bronchitis, without evidence of significant permanent pulmonary damage." Dr. Daniel felt that in view of these find-

ings, plaintiff's problems were not disabling from a physical standpoint.

Dr. Harold H. Kuhn examined plaintiff on December 1, 1962. This report was submitted subsequent to the denial of his first application. The impressions were (1) severe lumbosacral and myofascial strain, bilateral sciatic neuralgia, (2) post operative sympathectomy for the left lower extremity, (3) old painful scarring underneath left foot. It was Dr. Kuhn's opinion that plaintiff had a definite occupational handicap and it was doubted that he could carry out work requiring standing or prolonged walking. It must be pointed out that this examination took place over a year and a half from the expiration of plaintiff's insured status and that there is little indication he suffered from lumbosacral strain prior to that time.

The last report is that of Dr. E. G. Shannon. It states that plaintiff was treated on March 25 and 31, 1966, for hemoptysis of undetermined origin.

The record shows that plaintiff was complaining of a back condition in September 1962, at the hearing on his first application. However, none of the medical reports prior to Dr. Kuhn's report considered it significant. Though this adds to his present difficulty, there is little indication that it was sufficiently severe prior to March 31, 1961 to add to an alleged disability.

 Plaintiff's major impairment is the post-operative effect of the tumor removed from his left foot. He alleges that he suffers constant pain from this condition. We recognize that pain unaccompanied by any objectively observable symtoms, which is nevertheless real to the sufferer and so intense as to be disabling, will support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964). While plaintiff contends the pain is very great, the medical evidence indicates that the wound is well healed and although there is some limitation of motion of the big toe, none of the physicians considered it disabling.

Some did suggest that he would not be able to work at jobs requiring prolonged walking or standing, however, this is hardly equivalent to an inability to engage in any substantial gainful activity.

Before the burden shifts to the Secretary to show the availability of jobs the claimant retains the capacity to perform, the claimant must establish a sufficiently severe medically determinable disability to prevent a return to his past occupation. Unless this is done, there is no need to enter into a consideration of his work history, educational background or age. Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962). Plaintiff's last job was as a welder. This was bench work performed while sitting—the very type work the doctors felt he could do.

Plaintiff's "smothering" condition which was diagnosed as mild to moderate chronic spastic bronchitis cannot be said to be sufficiently severe that it adds significantly to his inability to engage in this sort of work. The same thing may be said of his sinus condition. Thus, considering these ailments in combination, they have not been shown to have been sufficiently severe, as of March 31, 1961, to preclude his returning to his prior occupation.

On this review, we must examine the record as a whole not for the purpose of making independent findings, but to determine whether the administrative findings have substantial evidentiary support. If we find that the support exists, as we do here, it is our clear duty under the mandate of the statute to uphold them, even though we might have arrived at a different conclusion initially. Snyder v. Ribicoff, supra.

Accordingly, in view of the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's Motion for Summary Judgment must be granted.